**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LESLIE WELLER**, | ) |
| | ) Case No. 1:17-cv-08799 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Hon. John Robert Blakey |
| **GILLIAN FLYNN, PENGUIN RANDOM** | ) |
| **HOUSE LLC d/b/a CROWN PUBLISHING** | ) |
| **GROUP, BRUNA PAPANDREA, LAURA** | ) |
| **JEANNE REESE WITHERSPOON, LESLIE** | ) |
| **DIXON, TWENTIETH CENTURY FOX** | ) |
| **FILM CORPORATION, AND DAVID** | ) |
| **FINCHER**, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**LAURA JEANNE REESE WITHERSPOON AND BRUNA PAPANDREA'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................................1

ARGUMENT ...................................................................................................................................3

I. WITHERSPOON AND PAPANDREA ARE NOT SUBJECT TO GENERAL
JURISDICTION IN ILLINOIS. .........................................................................................4

II. WITHERSPOON AND PAPANDREA ARE NOT SUBJECT TO SPECIFIC
JURISDICTION IN ILLINOIS. .........................................................................................5

    A.    Witherspoon and Papandrea Have Not Purposefully Directed Their
Activities at Illinois or Purposefully Availed Themselves of the Privilege
of Conducting Business in Illinois. ..........................................................................6

    B.    Plaintiff's Alleged Injury Does Not Arise Out of Witherspoon or
Papandrea's Activities in Illinois. ...........................................................................9

    C.    The Court's Exercise of Personal Jurisdiction Would Not Comport with
Fair Play and Substantial Justice. ..........................................................................11

CONCLUSION..............................................................................................................................12

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ..................................................................................4, 7, 11

*Am. Bridal & Prom Indus. Ass'n, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
192 F. Supp. 3d 924 (N.D. Ill. 2016) .................................................................4, 5

*Bristol-Meyers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)..........................................................................................4, 5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................................3, 5, 11

*Close v. New Line Cinema Corp.*,
No. 94 CV 7109, 1994 WL 761025 (N.D. Ohio Sept. 12, 1994) ............................9

*Colo'n v. Akil*,
449 F. App'x 511 (7th Cir. 2011) ..........................................................................8

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2016)........................................................................................3, 4, 5

*ESCO Corp. v. Cashman Equip. Co.*,
65 F. Supp. 3d 626 (C.D. Ill. 2014) ......................................................................4

*Horizon Comics Prod. v. Marvel Entm't, LLC*,
No. 15-11684, 2016 WL 526145 (D. Mass. Feb. 9, 2016) ...................................10

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..............................................................................................3

*Levi v. Twentieth Century Fox Film Corp.*,
No. 16-cv-129, 2017 WL 1227933 (E.D. Va. Mar. 30, 2017)................................9

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010) ............................................................................3, 9

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ............................................................................5, 6

*Palnik v. Westlake Entm't Inc.*,
344 F. App'x 249 (6th Cir. 2009) .......................................................................10

*Rush v. Savchuk*,
   444 U.S. 320 (1980)..............................................................................................................4

*United Airlines v. Zaman*,
   152 F. Supp. 3d 1041 (N.D. Ill. 2015) ..................................................................................7

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)................................................................................................5, 10, 11

*Wiggen v. Wiggen*,
   2011 IL App (2d) 100982 ......................................................................................................3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 12..........................................................................................1

Plaintiff Leslie Weller improperly attempts to subject Laura Jeanne Reese Witherspoon and Bruna Papandrea—neither of whom reside in Illinois nor have any contacts in the state—to this Court's jurisdiction. In connection with the film *Gone Girl*—the film that Plaintiff alleges infringes upon her work—Witherspoon and Papandrea did not have any contact with Illinois related to the activities that are alleged to form the basis of the Plaintiff's claim of vicarious copyright infringement against them. Plaintiff is not from Illinois. Nor are Witherspoon and Papandrea from Illinois. And their roles as producers in the alleged copyright infringement took place entirely in California. As explained below, and as confirmed by the concurrently-filed declarations, Witherspoon and Papandrea do not have sufficient contacts with Illinois to support the exercise of personal jurisdiction. Because Plaintiff's amended complaint fails to support any basis for this Court to exercise jurisdiction over Witherspoon or Papandrea, they respectfully request that the Court dismiss the claim against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

On December 6, 2017, Plaintiff initiated this action for copyright infringement in connection with the best-selling novel *Gone Girl*, which was published in 2012 and later adapted into the critically-acclaimed film that was released in 2014. (*See generally* Dkt. 1, Compl.) Plaintiff, a resident of Nevada (Dkt. 55, First Amended Compl. ("FAC") ¶ 5), sued the author of the book and screenplay, a resident of Illinois, and Twentieth Century Fox Film Corporation ("Fox"), the movie studio that produced and distributed the film in the United States (*id.* ¶¶ 6, 10). Plaintiff also sued a number of other film defendants, all of whom reside outside of

---

[1] As detailed in defendants' concurrently filed motion to dismiss under Rule 12(b)(6), Plaintiff's complaint should also be dismissed with prejudice for failure to state a claim for vicarious copyright infringement.

Illinois.[2]  (*Id.* ¶¶ 8-9, 11-12.)  After several of the defendants filed motions to dismiss based on

lack of personal jurisdiction under Rule 12(b)(2) (Dkts. 21-22, 35-36) and failure to state a claim

under Rule 12(b)(6) (Dkts. 39-40, 46-47), Plaintiff dismissed the defendants that challenged

personal jurisdiction, as well as certain other defendants,[3] and opted to file an amended

complaint on February 8, 2018 (Dkt. 55, FAC).  In the amended complaint, Plaintiff continues to

allege that she authored a screenplay, *Out of the Blue*, in 2005 and that the *Gone Girl* novel and

film supposedly contain striking and substantial similarities to her screenplay.  (FAC ¶¶ 1, 13,

49-50, 82.)

As to Witherspoon and Papandrea, Plaintiff maintains that they were producers of the

film and that Fox is the distributor of the film.  (*Id.* ¶¶ 8-10.)  Plaintiff seeks to impose vicarious

liability on Witherspoon and Papandrea by generically alleging, without any supporting factual

allegations, that they and the other movie defendants "had the right and ability to supervise,

control, or stop the infringing conduct . . . as it occurred over the course of the production and

distribution" of the film.  (*Id.* ¶ 116.)  She further alleges that Witherspoon and Papandrea had

and continue to have a direct financial interest in the infringing conduct based upon the sales and

licensing of the film.  (*Id.* ¶ 118.)

In an effort to bolster the thin allegations in her original complaint as to the Court's

ability to exercise personal jurisdiction over defendants, Plaintiff also adds to her amended

complaint that all defendants, including Witherspoon and Papandrea, allegedly targeted sales of

the novel, film, and related infringing works at Illinois residents and that they should therefore

---

[2] Plaintiff also sued the publisher of the novel and audiobook based on the same.  (FAC ¶ 7.)

[3] Plaintiff has voluntarily dismissed Artemple-Hollywood LLC, Regency Enterprises, Inc., TSG Entertainment Finance LLC, Joshua Donen, Arnon Milchan, Ceán Chaffin, and New Regency Productions, Inc. from her lawsuit.  (Dkts. 28, 52, 54, 56.)

reasonably expect those sales to have consequences in the state.  (*Id.* ¶ 3.)   She further adds that each of the defendants engaged in at least one of five different enumerated activities over which she alleges the Court can assert personal jurisdiction, without specifying which defendant took part in which activity.  (*Id.*)  Plaintiff does not allege that Witherspoon and Papandrea had any involvement in the screenplay, distribution, or creative development of the film in Illinois or elsewhere.  (*See generally id.*)

## ARGUMENT

This Court may exercise personal jurisdiction over a non-resident only if an applicable state long-arm statute confers jurisdiction, and the assertion of that jurisdiction is consistent with the demands of the Fourteenth Amendment's due process clause.  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  The Illinois "long-arm statute has been held to be coextensive with the due process requirements of the Illinois and United States Constitutions," and therefore, the two-step inquiry collapses into one: whether the exercise of personal jurisdiction over a defendant comports with constitutional due process.  *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 21.  Constitutional due process requires the court to determine whether the defendant has sufficient "minimum contacts" with Illinois such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  "[I]t is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it 'reasonably anticipate being haled into court there.'"  *Mobile Anesthesiologists*, 623 F.3d at 444 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The law recognizes two types of personal jurisdiction.  General jurisdiction requires that the defendant have "affiliations with the [forum] State [that] are so continuous and systematic as

3

to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S.

Ct. 746, 754 (2016) (internal quotation marks omitted). Specific jurisdiction requires that the

plaintiff's claims arise out of the defendant's activities that were purposefully directed at the

forum state. *Am. Bridal & Prom Indus. Ass'n, Inc. v. P'ships & Unincorporated Ass'ns*

*Identified on Schedule A*, 192 F. Supp. 3d 924, 931 (N.D. Ill. 2016) (Blakey, J.). The plaintiff

ultimately bears the burden of proving that jurisdiction over a defendant is proper. *Advanced*

*Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799-800 (7th Cir.

2014). In addition, the plaintiff must establish that the due process requirements for jurisdiction

are met *as to each defendant individually*, *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S.

Ct. 1773, 1783 (2017), and it is "not permissible to base personal jurisdiction on the defending

parties' aggregate forum contacts." *ESCO Corp. v. Cashman Equip. Co.*, 65 F. Supp. 3d 626,

631 (C.D. Ill. 2014) (citing *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980)).

Here, Plaintiff has not alleged the type of contacts necessary to justify this Court's

exercise of either general or specific jurisdiction over Witherspoon or Papandrea. As established

in the supporting declarations, they have had no contacts with Illinois whatsoever related to the

allegations of vicarious copyright infringement. Moreover, the jurisdictional allegations in the

complaint, even if accepted as true, are insufficient as a matter of law to support either type of

jurisdiction as to Witherspoon or Papandrea.

## I. WITHERSPOON AND PAPANDREA ARE NOT SUBJECT TO GENERAL JURISDICTION IN ILLINOIS.

General jurisdiction exists only when the party's affiliations with Illinois "are so constant

and pervasive as to render [it] essentially at home" there. *Daimler AG*, 134 S. Ct. at 751

(internal quotation marks omitted). The forum for the exercise of general jurisdiction for an

individual is the individual's domicile. *Id.* at 760. Applied here, general jurisdiction is

4

manifestly lacking as to both Witherspoon and Papandrea.  Plaintiff has conceded that both

reside outside of Illinois.  (FAC ¶¶ 8, 9.)  And, as detailed in their declarations, neither

Witherspoon nor Papandrea has ever lived in Illinois.  (Declaration of Laura Jeanne Reese

Witherspoon ("Witherspoon Decl.") ¶ 2; Declaration of Bruna Papandrea ("Papandrea Decl.")

¶ 2.)  Papandrea has not even visited the State in over seven years (Papandrea Decl. ¶ 2), whereas

Witherspoon has traveled there only once in the past seven years, and that was almost six years

ago to attend a gala as an award recipient.  (Witherspoon Decl. ¶ 2.)  Because neither has any

contacts with Illinois, there is no sense in which they could be "at home" in the state.  *Daimler*

*AG*, 134 S. Ct. at 760.

## II.     WITHERSPOON AND PAPANDREA ARE NOT SUBJECT TO SPECIFIC JURISDICTION IN ILLINOIS.

Where a defendant's contacts are insufficient to establish general jurisdiction, a court

may consider whether it can exercise "specific" personal jurisdiction with respect to a claim that

arises out of or relates to the defendant's contacts with the forum.  *Bristol-Meyers Squibb*, 137 S.

Ct. at 1780.  The inquiry focuses on "the relationship among the defendant, the forum, and the

litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted)

(finding no personal jurisdiction where the defendant didn't conduct activities within, contact

anyone in, or send anything or anyone to the forum state).  Specific jurisdiction is "case-specific"

and exists "where the defendant has 'purposefully directed' its activities at residents of the forum

state and where the plaintiff's claim is 'linked to the [defendant's] activities or contacts with'

Illinois." *Am. Bridal*, 192 F. Supp. 3d at 931 (quoting *Burger King*, 471 U.S. at 472-73).

The Seventh Circuit has promulgated a three-part test for when a court may exercise

specific personal jurisdiction: "(1) the defendant has purposefully directed his activities at the

forum state or purposefully availed himself of the privilege of conducting business in that state,

and (2) the alleged injury arises out of the defendant's forum-related activities . . . [and (3)] [t]he

exercise of specific jurisdiction must also comport with traditional notions of fair play and

substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014)

(citations omitted). Plaintiffs must prevail on each prong. *See id*. Here, Plaintiff cannot, as a

matter of law, satisfy *any* prong of this test, let alone all three, because the activities from which

Plaintiff's claim arises as to Witherspoon and Papandrea—namely, as producers on the film

*Gone Girl*—all occurred in California, not Illinois.

>        A.        **Witherspoon and Papandrea Have Not Purposefully Directed Their**
>                  **Activities at Illinois or Purposefully Availed Themselves of the Privilege of**
>                  **Conducting Business in Illinois.**

Plaintiff alleges that Witherspoon and Papandrea were "producers" and that they

"continue to have a direct financial interest" in the film based upon the sales and licensing of it.

(FAC ¶¶ 8-9, 118.) But those allegations fall far short of demonstrating that either of them have

"purposefully availed" themselves of the privilege of conducting business in Illinois. Indeed,

neither Witherspoon nor Papandrea has *any* contacts with Illinois: they do not live in Illinois,

own property there, or otherwise have an address, phone number, or bank account in the State.

(Witherspoon Decl. ¶ 2; Papandrea Decl. ¶ 2.) They also do not conduct any business in Illinois

or have an ownership interest in any business based or incorporated in Illinois. (*Id.*) And as

noted above, Papandrea has not visited the state in over seven years (Papandrea Decl. ¶ 2), and

Witherspoon has only been in Illinois once during that same time period for the Gene Siskel Film

Center Annual Gala (Witherspoon Decl. ¶ 2).

Moreover, with respect to the *Gone Girl* film, Witherspoon and Papandrea had limited

involvement in its creation and production. Neither Witherspoon nor Papandrea had any

involvement in brokering the deal between Fox and Flynn to option the rights to Fox to make the

novel *Gone Girl* into a movie or in hiring Flynn to write the screenplay. (Witherspoon Decl. ¶ 4;

Papandrea Decl. ¶ 4.)  As background, in 2012, Witherspoon read a pre-publication copy of the *Gone Girl* novel at the recommendation of screenwriter Leslie Dixon.  (*Id.* ¶ 3.)  After doing so, she and Papandrea contacted Flynn by phone, with an interest in making the novel into a movie, and they began working with Flynn in an attempt to find a studio to produce the film.  (*Id.*)  However, these efforts did not lead to Witherspoon and Papandrea securing a studio to produce the film or lead to a deal with Flynn, and their communication with her occurred entirely by telephone (or in person in Los Angeles).  (*Id.*)  Thus, jurisdiction fails for two reasons: (1) any contact with Flynn prior to, and unrelated to, Flynn's deal with Fox does not form the basis of Plaintiff's copyright infringement allegations regarding the film *Gone Girl*; and (2) Witherspoon and Papandrea's limited contact with Flynn is insufficient for a finding of specific jurisdiction. *See United Airlines v. Zaman*, 152 F. Supp. 3d 1041, 1053 (N.D. Ill. 2015) (Blakey, J.) (holding that an email chain and phone call were insufficient for minimum contacts, even if both communications were found to be sufficiently targeted at Illinois); *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (explaining that a few intentional sales to the forum state alone did not create personal jurisdiction).

Instead, and without any involvement of Witherspoon or Papandrea, Fox reached out to Flynn directly and entered into an agreement to obtain the film rights to the *Gone Girl* novel. (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4.)  Neither Witherspoon nor Papandrea participated in the negotiations or the agreement between Flynn and Fox, under which Fox obtained the film rights to the *Gone Girl* novel.  (*Id.*)  After Fox and Flynn reached this agreement to option the rights, Witherspoon and Papandrea entered into a separate agreement with Fox to compensate them for the time and effort they had already invested.  (*Id.*)  This agreement—which

7

Witherspoon and Papandrea negotiated outside of Illinois—included producer credits on the film should it be made.  (*Id.*)

When the film was ultimately made, Witherspoon and Papandrea had very limited roles as "producers."  (*See* FAC at 4 n.5 (citing VARIETY article, which states that "Witherspoon and Papandrea had little to do with the production of 'Gone Girl'").)  For example, neither was involved in writing the screenplay, and neither made any creative contributions to the storyline depicted in the film.  (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.)  Any limited involvement they did have as producers occurred entirely outside of Illinois.  (*Id.*)  In particular, Witherspoon and Papandrea did not hold meetings in Illinois, transact any business with anyone in Illinois, or enter into any contracts with anyone in Illinois—including Flynn—in connection with the film. (*Id.*)  They also never hired or employed anyone in Illinois for the film.  (*Id.*)

Plaintiff's hollow and conclusory allegations as to Witherspoon and Papandrea's work on the film are entirely insufficient to support the Court's exercise of specific jurisdiction.  Merely naming someone as a producer does not subject that person to the jurisdiction of every federal court in every state where the work is exhibited.  For example, in *Colo'n v. Akil*, 449 F. App'x 511 (7th Cir. 2011), a television writer living in Indiana filed a copyright action in the Southern District of Indiana, alleging that a television episode produced by the defendants infringed the copyright in her unpublished script. *Id.* at 512.  The district court dismissed the suit against five of the defendants for lack of personal jurisdiction; on appeal, the Seventh Circuit affirmed. *Id.* In so doing, the Seventh Circuit reasoned that the plaintiff had failed to show that producers "intentionally aimed their conduct at [the forum state] because she submitted no evidence that any of the defendants had anything to do with the [forum state's] broadcast" of the allegedly infringing television episode. *Id.* at 514.  Similarly, Plaintiff here also cannot make such a

8

showing, as there is no allegation—let alone evidence—that Witherspoon or Papandrea aimed their conduct at Illinois because they had no involvement in the distribution of the film. *See also Levi v. Twentieth Century Fox Film Corp.*, No. 16-cv-129, 2017 WL 1227933, at *4, 6 (E.D. Va. Mar. 30, 2017) (alleging a defendant is a "producer" or "director" of a nationally distributed television series was not enough to show defendants purposefully availed themselves of the privilege of conducting activities in the forum).

Further, allegations that a producer merely profited from a film that was exhibited in a forum are not sufficient to establish the existence of specific personal jurisdiction. *See Close v. New Line Cinema Corp.*, No. 94 CV 7109, 1994 WL 761025, at *1-2 (N.D. Ohio Sept. 12, 1994) (declining to exercise jurisdiction even where plaintiff alleged that the defendants, including a movie producer, "derived substantial revenue from goods used or consumed or services rendered in [the forum state]"). Plaintiff simply cannot establish that Witherspoon and Papandrea purposefully directed their activities at Illinois or purposefully availed themselves of the privilege of conducting business in Illinois. *Mobile Anesthesiologists Chi.*, 623 F.3d at 443.

**B.      Plaintiff's Alleged Injury Does Not Arise Out of Witherspoon or Papandrea's Activities in Illinois.**

Plaintiff has also not included any facts establishing the alleged injury arose from Witherspoon or Papandrea's forum-related activities in Illinois. Nor could she. As producers, they did not render any services with respect to the film in Illinois. (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.) Their limited involvement with the film took place outside of Illinois. (*Id.*) As noted above, Witherspoon and Papandrea did not enter into any agreements related to the film in Illinois, including with Flynn (*id.*), and they were not involved with the agreement between Fox and Flynn to obtain the film rights to the novel (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4).

9

Witherspoon and Papandrea also had no role whatsoever with respect to the distribution of the film (Witherspoon Decl. ¶ 7; Papandrea Decl. ¶ 7), which Plaintiff concedes (FAC ¶ 10 [alleging Fox distributed *Gone Girl*]).  Neither had any distribution rights for *Gone Girl*, and they have never overseen or supervised the film's distribution, which was instead handled by Fox.[4]  (Witherspoon Decl. ¶ 7; Papandrea Decl. ¶ 7; *see also* FAC ¶ 106, 110-11.)  Witherspoon and Papandrea have also never done, requested, or paid for any advertising or marketing of *Gone Girl* in Illinois.  (Witherspoon Decl. ¶ 6; Papandrea Decl. ¶ 6.)

Courts have repeatedly recognized that producers who do not participate in the distribution of films, like Witherspoon and Papandrea, are not subject to personal jurisdiction. *See, e.g.*, *Horizon Comics Prod. v. Marvel Entm't, LLC*, No. 15-11684, 2016 WL 526145, at *1, 5 (D. Mass. Feb. 9, 2016) (declining to exercise personal jurisdiction over producers and copyright owners who did not participate in the national distribution of a film).  In one case, *Palnik v. Westlake Entertainment Inc.*, 344 F. App'x 249 (6th Cir. 2009), the Sixth Circuit affirmed the district court's dismissal of a lawsuit brought by a singer against the producers of a movie that allegedly played two of his copyrighted songs without permission.  *Id.* at 253-54.  In finding that the district court properly dismissed the suit for lack of personal jurisdiction, the court observed that producers "do[] not necessarily own the distribution rights or control over how distribution is accomplished."  *Id.* at 252.  Here, Plaintiff has not alleged (nor could she) that her purported injury arose from Witherspoon or Papandrea's contacts with Illinois.  *See Walden*, 134 S. Ct. at 1122 (explaining that, for specific jurisdiction, the relationship between

---

[4] As set forth in their declarations, Witherspoon and Papandrea are not Fox's principals, nor is Fox their agent.  (Witherspoon Decl. ¶ 8; Papandrea Decl. ¶ 8.)

defendant's suit-related conduct and the forum "must arise out of contacts that the 'defendant

*himself*' creates with the forum state" (quoting *Burger King*, 471 U.S. at 475)).

### C. The Court's Exercise of Personal Jurisdiction Would Not Comport with Fair Play and Substantial Justice.

Lastly, finding personal jurisdiction here would not comport with traditional notions of

fair play and substantial justice. In assessing this requirement, courts consider various factors,

including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and the shared interest of the

several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at

477 (internal quotation marks omitted). Here, each of these factors weighs heavily against this

Court's assertion of jurisdiction over Witherspoon and Papandrea. First, both live in Los

Angeles (Witherspoon Decl. ¶ 2; Papandrea Decl. ¶ 2), and they would be burdened by having to

travel to Illinois for depositions, hearings, or trial. Second, Plaintiff's interest in obtaining

effective relief will remain intact, because Fox (the film's distributor) and the author of *Gone*

*Girl* (allegedly an Illinois resident) will presumably not challenge this Court's personal

jurisdiction. Third, there is nothing "efficient" about subjecting all of a film's individual

producers who reside outside of Illinois to a lawsuit in a foreign state when the movie studio that

actually distributed the film is also a named defendant. Fourth, it would offend "traditional

notions of fair play and substantial justice" to hale Witherspoon and Papandrea into an Illinois

court when there is nothing about their involvement with *Gone Girl* that could have reasonably

put them on notice that they could be sued in the state. *See Advanced Tactical Ordnance Sys.*,

751 F.3d at 803.

11

## CONCLUSION

Plaintiff's claim against Witherspoon and Papandrea should be dismissed.


Dated:  March 1, 2018                                      Respectfully submitted,

                                                          LAURA JEANNE REESE WITHERSPOON &
                                                          BRUNA PAPANDREA

                                                          By:        /s/ Richard L. Stone

                                                          JENNER & BLOCK LLP
                                                          Richard L. Stone (*pro hac vice*)
                                                          David R. Singer (*pro hac vice*)
                                                          Andrew G. Sullivan (*pro hac vice*)
                                                          633 West 5th Street
                                                          Suite 3600
                                                          Los Angeles, California 90071
                                                          Tel: (213) 239-2203
                                                          Fax: (213) 239-5199

                                                          Ashley M. Schumacher
                                                          Laura L. Norris
                                                          353 North Clark Street
                                                          Chicago, Illinois 60654
                                                          Tel: (312) 840-8672
                                                          Fax: (312) 840-7776

                                                          *Attorneys for Defendants Laura Jeanne Reese*
                                                          *Witherspoon and Bruna Papandrea*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on March 1, 2018, a true and correct copy of **Memorandum of Law in Support of Defendants Laura Jeanne Reese Witherspoon and Bruna Papandrea's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: March 1, 2018      By:     _/s/ Ashley M. Schumacher_

            Ashley M. Schumacher
            JENNER & BLOCK LLP
            353 North Clark Street
            Chicago, Illinois 60654
            Tel: (312) 840-8672

            *Attorney for Defendants Laura Jeanne*
            *Reese Witherspoon and Bruna Papandrea*