**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LESLIE WELLER**, | ) | |
| | ) | Case No. 1:17-cv-08799 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| **GILLIAN FLYNN, PENGUIN RANDOM** | ) | |
| **HOUSE LLC d/b/a CROWN PUBLISHING** | ) | |
| **GROUP, BRUNA PAPANDREA, LAURA** | ) | |
| **JEANNE REESE WITHERSPOON, LESLIE** | ) | |
| **DIXON, TWENTIETH CENTURY FOX** | ) | |
| **FILM CORPORATION, AND DAVID** | ) | |
| **FINCHER**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION OF DEFENDANTS**
**PENGUIN RANDOM HOUSE LLC AND GILLIAN FLYNN TO DISMISS FIRST**
**AMENDED COMPLAINT**

Kevin Tottis (ARDC No. 6193853)
Monica L. Thompson (ARDC No. 6181455)
Rachel M. Vorbeck (ARDC No. 6238297)
TOTTISLAW
One East Wacher Drive
Suite 1205
Chicago, Illinois 60601
Telephone: (312) 527-1400
Facsimile: (312) 589-7192

Linda Steinman (Admitted *pro hac vice*)
Jeremy A. Chase (Admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Defendant*
*Penguin Random House LLC and for*
*Gillian Flynn in connection with the Novel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................2

    I.     PLAINTIFF MISCHARACTERIZES THE LAW AND ITS
APPLICATION .....................................................................................................2

          A.     Plaintiff Butchers the Standard of Review...................................................3

          B.     Plaintiff Misstates the Importance of Differences Between the
Works .......................................................................................................5

          C.     The "Selection and Arrangement" Doctrine Provides No Aid to
Plaintiff ...................................................................................................7

          D.     The Seventh Circuit Has Not Condoned Random Lists of Scattered
Similarities ..............................................................................................10

    II.    THE WORKS HAVE NO SUBSTANTIAL SIMILARITY IN
PROTECTED EXPRESSION .............................................................................11

CONCLUSION....................................................................................................................16

4836-2250-0448v.3 3910039-000229

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*,
672 F.2d 607 (7th Cir. 1982) ......................................................................... *passim*

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
329 F.3d 923 (7th Cir. 2003) .........................................................................9

*Deltak, Inc. v. Advanced Sys., Inc.*,
767 F.2d 357 (7th Cir. 1985) .........................................................................8

*Design Basics LLC v. Lexington Homes, Inc.*,
858 F.3d 1093 (7th Cir. 2017) ....................................................................4, 9, 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ......................................................................................7, 8

*Funky Films, Inc. v. Time Warner Entm't*,
462 F.3d 1072 (9th Cir. 2006) ....................................................................7, 13, 14

*Gaiman v. McFarlane*,
360 F.3d 644 (7th Cir. 2004) .........................................................................5

*Gibson v. City of Chi.*,
910 F.2d 1510 (7th Cir. 1990) .......................................................................4

*Grosso v. Miramax Film Corp.*,
383 F.3d 965 (9th Cir. 2004) .........................................................................15

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ......................................................................................8

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999) .....................................................................10

*Hobbs v. John*,
722 F.3d 1089 (7th Cir. 2013) ................................................................. *passim*

*JCW Invs., Inc. v. Novelty, Inc.*,
482 F.3d 910 (7th Cir. 2007) .........................................................................4, 9

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) .......................................................................10

ii

*Mid Am. Title Co. v. Kirk*,
  59 F.3d 719 (7th Cir. 1995) ................................................................7

*Peters v. West*,
  692 F.3d 629 (7th Cir. 2012) ...........................................................9, 10

*Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp.*,
  463 F.3d 478 (6th Cir. 2006) .............................................................8

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ...........................................................9

*Sheldon Abend Irrevocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010).............................................4, 14

*Tillman v. New Line Cinema Corp.*,
  295 F. App'x 840 (7th Cir. 2008) ....................................................6, 13

*Walker v. Time Life Films*,
  784 F.2d 44 (2d Cir. 1986)........................................................10, 13, 14

*Warner Bros. v. ABC*,
  720 F.2d 231 (2d Cir. 1983)................................................................4

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
  18 F.3d 502 (7th Cir. 1994) ..............................................................7

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996)................................................................10

**Federal Statutes**

17 U.S.C. § 411(a) ...........................................................................5

17 U.S.C. § 505................................................................................16

**Rules**

Federal Rules of Civil Procedure
  12(b)(6) ....................................................................................3, 4, 16
  15(a)(1)(B) ....................................................................................5

4836-2250-0448v.3 3910039-000229

## <u>PRELIMINARY STATEMENT</u>

In Random House's opening brief, it provided a plot summary of the central storylines in Plaintiff's screenplay *OTB3* (the "Screenplay") and Gillian Flynn's novel *Gone Girl* (the "Novel"). As those plot summaries quickly showed, the works tell very different stories. At its core, *OTB3* is a tale of shifting alliances among five lovers. It tells the story of Mary who unsuccessfully plots with her ex-boyfriend and lover Carl to kill her husband Steve in a car crash, but instead lands in a 7-year coma herself. After she recovers, it traces Mary's fury at the fact that her husband and his new wife Eileen have custody of her child, and her eventual re-capture of her husband's heart in violent sex scenes. It culminates in the murder of both Mary and Steve by Carl and Eileen. The central storyline in *Gone Girl* is completely different. Part One of the novel focuses on the mysterious disappearance of scintillating Amy, and the police and reader's increasing suspicions that her husband Nick may have murdered her. In Part Two, the reader learns that Amy is alive and well, and has sought to frame her husband to avenge his affair with a fawning student. The novel portrays their continued efforts to outwit the other, and culminates with Amy's return to Nick and her decision to get pregnant to bind them together. Random House's opening brief also highlighted the stark differences in the totality of the main characters' core attributes and traits.

Plaintiff has no answer to these essential differences in expression between the works. Her brief provides no overarching plot summary of the central storyline in the two works, since that would immediately betray their lack of substantial similarity in expression. Instead, she merely refers the Court to the scattered lists of piecemeal supposed similarities in her First Amended Complaint ("FAC"), which often distort the works beyond recognition. She does not even try to describe how Mary and Amy share a similar totality of core attributes – since, as Random House showed, the privileged Amy, with her "brilliant, popping brain," who

1

meticulously plans manipulations of her husband, the media, and the police, is entirely different than the rather dim, impulsive, good-girl-turned-sex-pot Mary, who comes from modest means.

Lacking any convincing response to Defendants' arguments, Plaintiff's answering brief does a few things. First, it presents a highly misleading portrayal of the governing law. Second, it continues to rely on alleged similarities in basic, abstract plot ideas or hones in on isolated character attributes, without grappling with the fact that the works at issue express these basic plot ideas totally differently and that the main characters do not share many core traits beyond being femme fatales or wavering husbands attracted to their psychopathic wives. As the Seventh Circuit held in *Hobbs v. John*, a plaintiff cannot rely upon "a combination of dissimilar expressions" of abstract ideas to establish that a defendant's work infringes upon the allegedly unique combination of elements in her work. 722 F.3d 1089, 1095-96 (7th Cir. 2013).

In the end, when considered at the level of detailed expression, the works at issue have dramatically different plots, characters, settings, themes, structure, mood, and "total concept and feel." Ultimately, when one reads the actual works, it is clear that the Novel and the Screenplay are not substantially similar under the governing legal standards. This Court should dismiss the FAC as a matter of law.

## ARGUMENT

## I. PLAINTIFF MISCHARACTERIZES THE LAW AND ITS APPLICATION

The substantial similarity analysis for determining whether there has been improper appropriation of a work of fiction is well-established and fairly straightforward. The Court must compare the works at issue – not descriptions of them – and determine whether the works "simply tell different stories." *Hobbs*, 722 F.3d at 1096. This involves a comparison of the "pattern of the work, . . . the sequence of events, . . . the development of the interplay of characters" and other pertinent elements of the works. *Atari, Inc. v. N. Am. Philips Consumer*

2

*Elec. Corp.*, 672 F.2d 607, 616 n.8 (7th Cir. 1982).

In her answering brief, Plaintiff does not dispute that, "In cases involving fictional literary and dramatic works, courts typically consider plot, sequence of events, characters, mood, theme, pace, dialog and setting." Pl. Br. at 9. Nor does Plaintiff rebut that in the Seventh Circuit (in contrast to the Ninth Circuit), the ordinary observer test requires the Court to examine the "total concept and feel" of the works on a motion to dismiss. *Atari*, 672 F.2d at 614. Likewise, Plaintiff concedes, as she must, that general plot ideas are not protectable, and that a copyright claim must be based on substantial similarity in the detailed expression. Pl. Br. at 6. Further, Plaintiff admits that, "*scenes a faire* cannot be protected because it is 'rudimentary, commonplace, standard or unavoidable' and because other works cannot be without it." Pl. Br. at 7 (quoting *Hobbs*, 722 F.3d at 1095). Despite conceding these key points, Plaintiff nonetheless rests her case on the FAC's scattershot list of abstract ideas and *scènes à faire*. Then, she misrepresents other aspects of copyright law in a futile effort to resuscitate her claim.

Plaintiff makes several legal errors which infect her argument, which we explain below.

### A.      Plaintiff Butchers the Standard of Review

Plaintiff provides a bizarrely confusing summary of the standard of review. Defendants have moved to dismiss the complaint under Rule 12(b)(6), and Random House's opening brief presented reams of case law establishing that courts routinely grant motions to dismiss copyright infringement cases for lack of substantial similarity based solely on a side-by-side comparison of the works. RH Br. at 7-9. Plaintiff does not – and cannot – rebut that case law. Instead, Plaintiff oddly treats this motion as if it were a motion for summary judgment. First, she warns the Court not to make credibility determinations or weigh conflicting factual evidence – concepts that make no sense for a Court comparing two literary works before it. Next, she obliquely suggests that she can submit evidence "regardless of whether such evidence was contained in the FAC."

Pl. Br. at 2.  To the contrary, evidence that is not attached to or integral to the four corners of the FAC – particularly evidence introduced to modify or assist in comparison of the works – is wholly irrelevant on a Rule 12(b)(6) motion to dismiss a copyright infringement claim.  *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint.") (citation and internal quotation marks omitted); *cf. JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007) ("We look at the dolls themselves to determine substantial similarity").  Nothing else is necessary to conduct this analysis.  *See* RH Mot. at 7-8.

There are several other problems with Plaintiff's argument.  First, she has not submitted any conflicting evidence that could rehabilitate her claim.  Second, the evidence that she suggests she might want to belatedly incorporate into a Second Amended Complaint is that some unidentified friends of hers saw the *Gone Girl* film and thought it was similar to *OTB3*.  Pl. Br. at 14 n.5.  But in this context, "opinions of third parties [including those] published in secondary materials are . . . irrelevant."  *Sheldon Abend Irrevocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204 n.4 (S.D.N.Y. 2010).  The "ordinary observer test" is "an objective one," in which the court imports a "reasonable person" standard into copyright law.  *Design Basics LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1101 (7th Cir. 2017) (citing *JCW Invs.*, 482 F.3d at 916).[1]  The subjective views of Plaintiff's random friends, unschooled in what constitutes "protectible expression," cannot enlarge the scope of copyright protection.  *Warner Bros. v. ABC*, 720 F.2d 231, 244-45 (2d Cir. 1983) (warning of dangers of trial by "public opinion poll" and rejecting use of survey evidence to show that lay observers would find works substantially

---

[1] The court determines "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendants unlawfully appropriated the plaintiff's *protectible expression* by taking material of substance and value."  *Design Basics*, 858 F.3d at 1101 (emphasis added).

4

similar because substantial similarity is "not a concept familiar to the public at large").

In a strange twist, Plaintiff offers one critical piece of new "evidence" for the Court's consideration: for the first time, Plaintiff states in her answering brief that *OTB3* was *not* the document allegedly provided to Pilar Alessandra which then supposedly made its way to Ms. Flynn, and instead submits an *entirely different document* to the Court upon which she now bases her entire claim. Pl. Br. at 1 n.1. This despite the fact that her entire FAC is premised on the argument that Defendants had access to *OTB3* and that *Gone Girl* impermissibly copied from *OTB3*. Even were it properly before the Court, this earlier version of Plaintiff's screenplay is not "substantially similar" to *Gone Girl* for the same reasons as *OTB3*. But critically, there is no indication in Plaintiff's FAC or her answering brief that she sought to register this "other document" with the Copyright Office – a prerequisite for bringing a copyright lawsuit. 17 U.S.C. § 411(a) ("Registration of a copyright is a precondition to filing suit for copyright infringement"); *Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir. 2004). Thus, on this ground alone, Plaintiff's FAC should be dismissed.[2]

### B. Plaintiff Misstates the Importance of Differences Between the Works

Plaintiff botches the role of "differences" between works in the substantial similarity analysis and misleadingly asserts that Random House's discussion of the vast dissimilarities

---

[2] To the extent Plaintiff seeks to amend her FAC to incorporate any new "evidence," including her earlier manuscript or the reactions of her friends to the Film, that ship has sailed. Plaintiff has forfeited her right to amend her FAC pursuant to Judge Blakey's Rule on Motions to Dismiss which provides:

> When a motion to dismiss is filed, the non-moving party has a right to amend its pleading once within 21 days. Fed. R. Civ. P. 15(a)(1)(B). If the non-moving party elects not to amend its pleading to address the purported deficiencies raised by the motion (or seek leave to amend its pleading again), then the motion to dismiss will proceed in its normal course and, if the moving party prevails, the Court may dismiss the case with prejudice and not provide further opportunity to amend the pleading absent extraordinary circumstances.

Here, Plaintiff was well aware of any and all deficiencies in her FAC, yet chose not to amend again within 21 days of Random House filing its motion to dismiss. *See* Doc. No. 70 (filed Mar. 1, 2018). There are no "extraordinary circumstances" that could justify allowing her to amend her FAC now.

4836-2250-0448v.3 3910039-000229

between *Gone Girl* and *OTB3* was somehow improper. Of course, the opposite of "similar" is "different," and thus defendants and judges asserting that works are not "substantially similar" routinely – and properly – describe them as "different." *See*, *e.g.*, *Hobbs*, 722 F.3d at 1095-96 (finding no infringement where the two works "tell *different* stories") (emphasis in original); *Tillman v. New Line Cinema Corp*., 295 F. App'x 840, 842 (7th Cir. 2008) (finding no infringement where "[t]he central characters, theme and plot in John Q differ markedly from those in [plaintiff's work]"). Differences in expression are without question relevant – and indeed essential – to the substantial similarity inquiry.

Plaintiff has misconstrued the courts' far more limited admonition that where a plaintiff can show substantial similarities in the overall artistic expression in two works, "cosmetic," "slight," or "minute" differences in detail will not save the day and preclude a finding of infringement.[3] In *Atari*, for example, the makers of the videogame PAC-MAN claimed another game was substantially similar because, like PAC-MAN, it portrayed a "gobbler" with the same size and shaped body, same V-shaped mouth, and same gobbling action and sounds, traveling through a maze and avoiding enemy ghosts who move and look the same. *Id.* To try to avoid a finding of substantial similarity, the defendant drew the court's attention to various cosmetic differences between the games including "the concept of moving dots, variations in mazes, and certain changes in facial features and colors of characters." *Id.* at 619. The Court held that "slight differences between a protected work and an accused work will not preclude a finding of infringement where the works are substantially similar in other respects," but noted that, in contrast, "numerous differences may influence the impressions of the ordinary observer." *Id.* at 618. As the Seventh Circuit phrased it, "When analyzing two works to determine whether they

---

[3] *Hobbs*, 722 F.3d at 1096 (discounting "cosmetic" differences); *Atari*, 672 F.2d at 618 (discounting "slight" and "minute" differences).

6

are substantially similar, courts should be careful not to lose sight of the forest for the trees." *Id.*; *see also Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) ("These differences are of minor importance in the overall artistic expression of the entire animal faces and tails under review and, consequently, they do not preclude a finding of infringement under the ordinary observer test.").

Here, there are major, fundamental differences in the overall artistic expression between *Gone Girl* and *OTB3*. Just as in *Hobbs*, the two works "simply tell different stories" in their essential plot arc. *Hobbs*, 722 F.3d at 1096; *see also Funky Films, Inc. v. Time Warner Entm't*, 462 F.3d 1072 (9th Cir. 2006) (comparing storylines of works). There are also core differences in the key attributes of the characters, settings, structure, themes, and the total concept and feel. Those fundamental differences preclude a finding of substantial similarity.

### C.     The "Selection and Arrangement" Doctrine Provides No Aid to Plaintiff

In a mix-and-match fashion, Plaintiff attempts to import a "selection and arrangement" theory into her traditional infringement claim by suggesting that *Gone Girl* improperly copied the "unique arrangement of individually unprotectable elements" in *OTB3*. Pl. Br. at 8-9. Her brief is highly misleading.

The selection and arrangement doctrine is narrowly confined. It holds that although there is no copyright protection for facts or ideas, there can be a very "thin" copyright protection for the original choice of which facts or ideas to include, in what order to place them, and how to arrange the collected data. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). The doctrine generally applies to factual compilations such as directories, databases, and collections of forms. *Feist*, 499 U.S. 340; *Mid Am. Title Co. v. Kirk*, 59 F.3d 719 (7th Cir. 1995). Critically, the protection extends *only* to the specific selection and arrangement, not to the underlying material. Indeed, "no matter how much original authorship the work displays, the

7

facts and ideas it exposes are free for the taking." *Feist*, 499 U.S. at 349. The doctrine is an extremely poor fit for fictional screenplays and novels, and Plaintiff cites no case applying it in that context. Fictional literary works contain thousands upon thousands of individual details to make up a creative whole. Moreover, it is difficult to see how a court could separate out their selection and arrangement from the underlying ideas that are free for the taking. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985) (the most fundamental axiom of copyright law is "[n]o author may copyright his ideas or the facts he narrates").

In any event, in the context of fictional literary works, the selection and arrangement doctrine would simply mean that to the extent that there is something genuinely original about the specific selection and arrangement of individual unprotectable elements of a plot, that specific selection and ordering would be protectable, but not the individual unprotectable plot elements themselves. "[T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas." *Feist*, 499 U.S. at 349 (citation omitted). Moreover, a plaintiff must demonstrate either the "same" selection and arrangement of unprotectable material or a very high level of overlap. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp.*, 463 F.3d 478, 482-83 (6th Cir. 2006) (dismissing claim where defendant's collection of forms using 61% of the same forms as plaintiff's "can hardly be considered the 'same' selection"); *compare Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir. 1985) (affirming infringement where defendant copied "the exact language" of plaintiff's task list and used "the exact sequence in which the tasks were listed"). Here, any overlapping plot ideas and *scènes à faire* unquestionably have been reshuffled in *Gone Girl* and are in a different context – so this doctrine is of absolutely no aid to Plaintiff.

8

In suggesting that she can base her claim on unprotectable elements, Plaintiff relies heavily on a footnote in *Hobbs*. *See* 722 F.3d at 1093 n.4. But *Hobbs* merely reserved for another day the question of whether a unique selection, arrangement and combination of individually unprotected elements in a song can form an original expression entitled to copyright protection in the first instance. *Id.* Most critically, *Hobbs* and the other cases cited by Plaintiff, including *JCW Invs.*, *Bucklew*, and *Shaw*, all make plain that in determining the substantial similarity of creative works, a fundamental tenet of copyright law is that the Copyright Act does not protect general ideas but only the detailed *expression* of those ideas.[4] As the Seventh Circuit held in *Hobbs*, "Hobbs cannot rely upon a combination of dissimilar expressions to establish that [defendant's song] infringes upon [plaintiff's song's] unique selection, arrangement and combination of those expressions." Just as in *Hobbs*, Plaintiff cannot rely on a combination of dissimilar expressions of abstract ideas to establish that *Gone Girl* infringes upon her allegedly unique selection, arrangement and combination of those expressions in *OTB3*. *Hobbs* also confirmed that expressions that are commonplace (i.e., *scènes à faire*), could not support a finding that the works are substantially similar. *Id.* at 1096; *see also Design Basics*, *infra*.

---

[4] *See JCW Invs.*, 482 F.3d at 917 (holding that the "details" of the doll represent "creative expression" and go beyond the "idea of a farting, crude man"); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 929 (7th Cir. 2003) (holding that "copyright protects only expression" and there is no copyright protection for "generic characteristics, obtained by abstracting the commonest features of the specific work" since "they do not indicate uniqueness" and are "at the opposite extreme from the arbitrary details . . . that contribute [to the] originality of an expressive work"); *Shaw v. Lindheim*, 919 F.2d 1353, 1359, 1363 (9th Cir. 1990) (noting that substantial similarity "test focuses not on basic plot ideas, which are not protected by copyright, but on 'the actual concrete elements'" of the plot and characters, and holding only that the fact that plot elements are not "remarkably unusual" will not be a bar to a finding of substantial similarity if both scripts contain substantial similar plot elements). *Shaw* is also highly distinguishable because a) the Ninth Circuit employs an intrinsic/extrinsic test for substantial similarity that the Seventh Circuit does not; and b) in *Shaw*, there was clear proof of access and the Ninth Circuit ruled that in such circumstances, it would apply a lower threshold for substantial similarity – a ruling both inapplicable on the facts here and contrary to Seventh Circuit law. *Peters v. West*, 692 F.3d 629, 635 (7th Cir. 2012).

9

**D.  The Seventh Circuit Has Not Condoned Random Lists of Scattered Similarities**

Finally, Plaintiff seizes upon language from *Peters* defining the substantial similarity inquiry as whether two works "share enough unique features to give rise to a breach of the duty not to copy another's work," to argue that the Seventh Circuit somehow condones the long-condemned use of random lists of scattered alleged similarities.  692 F.3d at 633-34.  Nothing in *Peters* suggests a change from the fundamental principles of copyright law identified in Random House's moving brief (RH Mot. at 6-9), including but not limited to the principle that lists of scattered random similarities between literary works are "inherently subjective and unreliable." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999).  Rather, the language Plaintiff highlights was the Court's attempt to clarify "confusing nomenclature" used among the various circuits in setting forth how probative similarity can sometimes help establish access.  *Peters*, 692 F.3d at 633-34.

As numerous cases make clear, establishing substantial similarity requires examination of the detailed, fundamental arc of the plot – i.e., the "pattern of the work, . . . the sequence of events" – including the total concept and feel.  *Atari,* 672 F.2d at 614, 616 n.8; *see also Design Basics*, 858 F.3d at 1105 (requiring substantial similarity in "total concept and feel of the copyrighted work"); *Hobbs*, 722 F.3d at 1095 (reviewing detailed overall plot line).  Likewise, a court looks at the "totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]." *Walker v. Time Life Films*, 784 F.2d 44, 50 (2d Cir. 1986).  The lists of scattered, isolated alleged similarities in the FAC never provide this comprehensive analysis, and Plaintiff's brief fails to do so entirely.

10

## II.     THE WORKS HAVE NO SUBSTANTIAL SIMILARITY IN PROTECTED EXPRESSION

As Random House demonstrated in its moving brief, under the proper legal analysis, Plaintiff cannot show substantial similarity in any of the literary building blocks of *OTB3* and *Gone Girl*.

**Plot and Sequence of Events.**  Quite remarkably, Plaintiff's answering brief offers no overarching plot summaries of the works at issue and their alleged parallels.  Instead, her one brief description of the plot similarities shows her fundamental misunderstanding of the idea/expression dichotomy.  Pl. Br. at 4.  In trying to argue that the works are substantially similar, she downplays major elements of *Gone Girl* absent from *OTB3* (such as the media angle and the police investigation central to its plot) and names three allegedly similar plot elements that she argues demonstrate substantial similarity, but all are merely unprotectable abstract ideas.

*First*, Plaintiff claims that both works explore the "suspicious nature of the husband's inappropriate reactions to what has happened to his wife."  But the expression of this vague idea is markedly different between the works.  Most obviously, "what has happened to" Amy and Mary is not *remotely* similar:  in *OTB3*, Mary is in a seven-year coma after driving her car off a cliff, whereas in *Gone Girl*, Amy goes missing and attempts to frame Nick for murder.  Following suit from there, both Nick and Steve's actions, and the reasons they are inappropriate or suspicious, differ in expression.  Nick has "inappropriate reactions" to his wife's disappearance for several reasons, including his generally passive nature, his desperate desire to be liked, and the secret he harbors about his affair and plan to divorce Amy.  Ex. A at 142, 200.  These lead him to smile at the press conference announcing Amy's disappearance and give repeated interviews to the media and police filled with transparent lies – making the police and reader suspect him of murdering Amy.  By contrast, the only "inappropriate" thing that Steve

4836-2250-0448v.3 3910039-000229

does is to abandon Mary after many years in a lengthy coma. While this is not admirable behavior, it doesn't lead the reader to be suspicious of Steve for any role in her car accident – especially since Mary was driving and he was in the back seat.

*Second*, Plaintiff pins her claim of substantial similarity in plot on the allegation that the "husband's suspiciously dangerous and dismissive behavior [is] represented in the diary of flashbacks of their married life." Again, the expression of this element – to the extent it even appears in both works – is not remotely similar. As an initial matter, there are no diary entries or flashbacks in *OTB3*. The only time-shifting is that the screenplay opens with a very brief flash-forward of the car accident; after that, it proceeds in straight chronological order, in stark contrast to the unusual structure of *Gone Girl*. Further, any "dangerous" behavior on Nick's part in Amy's diary entries in *Gone Girl* is colored by the fact that Amy's diary is not a truthful account of their marriage, but rather was manufactured later with an eye toward framing Nick for murder. Ultimately, the only commonality Plaintiff identifies here is a husband acting dismissively toward his wife, a classic *scènes à faire* in a story about a marriage's breakdown.

*Third*, Plaintiff claims a central plot similarity in that both works contain the "discovery that the wife had been purportedly pregnant." As discussed earlier, the expression of this broad idea could not be more distinct in the two works. Mary was, in fact, pregnant – unbeknownst to her – at the time of the car accident, and the reader learns that Steve had raised her child for seven years after the accident. Amy, on the other hand, left fake clues that she was pregnant at the time of her disappearance as part of her plan to frame Nick for her presumed murder. But this was all a ruse. Only after she returns to Nick at the end of the book does Amy actually become pregnant via artificial insemination to force Nick to stay with her. In short, unless stated at the highest level of generality, there is no similarity in expression between the two works in all

12

three of the points that Plaintiff depicts as the core of her claim of substantial similarity.

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006), a Ninth Circuit decision cited with approval by the Seventh Circuit in *Tillman*, 295 F. App'x at 842-43, well illustrates the difference between ideas and expression. There, the plaintiff claimed that the HBO series "Six Feet Under" infringed upon the copyright in her Screenplay, "The Funk Parlor." Much like here, the plaintiff recounted a lengthy list of surface-level similarities between the two works. As recounted by the court:

> According to appellants, both works concern "a narrative about a small funeral home, and the lives of the family members who operate it"; plot-lines involving "the death of the father ... [who] has for decades run the business"; a father whose death is "unexpected and not attributable to natural causes" (suicide in "The Funk Parlor" and a car accident in "Six Feet Under"); and the presence of "two sons" who receive equal shares of the business, with the "older son ... liv[ing] in a distant city, working outside the funeral industry." In both works, the older son initially "has no interest in becoming involved with the funeral business"; moreover, "[t]he family business is financially fragile, and in both works the funeral home is pointedly shown to be in debt and operating out of a substandard facility with obsolete equipment and a hearse that stalls." Both works also contain an attempt by a "rival funeral home," spearheaded by "the female principal of the rival business" to "take[ ] advantage of their vulnerable financial condition," "bluntly mak[ing] a lowball offer" and "approaching one of the brothers at the father's funeral with a proposal to buy the family business." In both works, the older brother initially "expresses his desire to sell" but "changes his mind and commits himself to help his brother keep the business afloat." Finally, appellants point out the older brother's creativity, which stands in "pointed contrast to the leaden conservatism of the younger brother"; that the funeral home in both works is used as a "site for musical entertainment"; that the "younger brother ... change[s] his church affiliation in order to increase their client base" in both works; and that "the rival's takeover attempt does not succeed."

462 F.3d at 1077-78. Upon examination of the actual works, however, the court held that these similarities were nothing more than "general plot ideas" and *scènes à faire* that are not protected by copyright law. *Id.* at 1081. The actual expression in the two works was different: "the Funk Parlor" was a murder mystery in which the prodigal son falls in love with and marries a neighbor who is actually a serial killer, whereas "Six Feet Under" explored the intimate lives and psyches of each member of the Fisher family, focusing on "the way the characters struggle with *life* in the

13

wake of the cataclysmic death of the father." *Id.* at 1078. Just as in *Funky Films*, the surface-level similarities Plaintiff identifies between *Gone Girl* and *OTB3* are simply general plot ideas and *scènes à faire* that cannot satisfy her burden of pleading substantial similarity.

**Characters.** Plaintiff concedes that the *femme fatale* character archetype is not entitled to any copyright protection (Pl. Br. at 10), yet she offers no rejoinder to Random House's presentation of the vivid contrast between the most salient characteristics of the two main female characters Amy and Mary. Likewise, Plaintiff ignores Random House's discussion of the lack of similarity between the core personality traits of Nick and Steve. They have starkly different demeanors, motivations, occupations, class backgrounds, relationships with their parents and siblings, views on homosexuality, and ultimate fates. Plaintiff's only argument pertains to a single alleged similarity in the way that both Nick and Steve initially want to kill their psychopathic wives, but become attracted to them in the end. Pl. Br. at 11-12.

As an initial matter, even if this *were* an actual similarity in expression between the characters, a single common trait or reaction of two characters does not alone make the characters or underlying works substantially similar. *See*, *e.g.*, *Walker*, 784 F.2d at 50 (a court looks at the "totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]") (internal quotations omitted); *Sheldon Abend Revocable Trust*, 748 F. Supp. 2d at 208 (holding that, "The bar for substantial similarity in a character is set quite high" and citing case examples).

In any event, the alleged commonality is entirely different in expression – as is evident from the actual text quoted in Plaintiff's answering brief (Pl. Br. at 11-12), and in terms of the broader plot points. Mary's reveal that she is a hyper-sexualized, violent, "bitch" appeals to Steve because of his own kinky nature and attraction to "bad girls." Ex. B at 76, 80, 82. By

14

contrast, Nick, with his pathological need to be liked (Ex. A at 37, 43, 52-53, 200), is not turned on by Amy's violence per se, but is overcome by the fact that Amy wants him so badly that she would go to crazy extremes to win him back. *See*, *e.g.*, Ex. A at 396-97 (Nick is attracted by "the lengths she had gone to – to punish me and to return to me . . . . [No other woman] could []ever possibly care that much."). Thus, this "similarity" is just an abstract idea expressed in entirely different ways in the works.

**Settings and Themes**. Plaintiff does little to rebut the stark differences between the remaining elements of the works. With respect to the settings, Plaintiff attempts to claim that the towns in both works "have a 1950s-era quality." However, even the language Plaintiff quotes from *Gone Girl* makes clear that while North Carthage, Missouri may have *once* been a quaint 1950s town, it has now "bloated itself into a midsize suburb," and the Novel is filled with heartbreaking descriptions of its state of decay during the 2008 recession. *See* Pl. Br. at 13. Moreover, Plaintiff does not rebut that, even assuming the works did share a setting of towns with "a 1950s era quality," that would be far too generic to constitute protectable expression. *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004). As for themes, Plaintiff repeats without analysis that the *question* of how well one person can really know another is common to both works. She does nothing to respond to Random House's presentation that this question is *answered* entirely differently in the two works, and that *Gone Girl* has other different and more central themes. *See* RH Mot. at 18-19.

**Structure, Style, and Tone.** Plaintiff admits that the structure and style of the two works are markedly different. Pl. Br. at 3-4. Otherwise, Plaintiff says nothing to support any similarities regarding these elements in the works.

**Total Concept and Feel.** Finally, Plaintiff does nothing to demonstrate that the total

concept and feel of the works are substantially similar. Hers is a sex-fueled, plot-driven pot boiler ending in lengthy violent murder scenes; *Gone Girl* is a high-concept, psychological thriller with highly developed characters, weaving in smart observations about marriage, the media, the impact of the recession, and the creation of manufactured public images.

In sum, *Gone Girl* is not substantially similar in protected expression to Plaintiff's screenplay *OTB3*. Random House and Flynn's motions to dismiss should be granted.

## <u>CONCLUSION</u>

Defendants Penguin Random House LLC and Gillian Flynn respectfully submit that the Court should grant their motions to dismiss the First Amended Complaint under Rule 12(b)(6) and award attorney's fees pursuant to 17 U.S.C. § 505.

Dated: April 12, 2018        Respectfully submitted,

By: */s/ Linda Steinman*
    Linda Steinman (Admitted *pro hac vice*)
    Jeremy A. Chase (Admitted *pro hac vice*)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone:    (212) 489-8230
Email:    lindasteinman@dwt.com
        jeremychase@dwt.com

Kevin Tottis (ARDC No. 6193853)
Monica L. Thompson (ARDC No. 6181455)
Rachel M. Vorbeck (ARDC No. 6238297)
TOTTISLAW
One East Wacher Drive, Suite 1205
Chicago, Illinois 60601
Phone:    (312) 527-1400
Email:    ktottis@tottislaw.com
        mthompson@tottislaw.com
        rmvorbeck@tottislaw.com

*Attorneys for Defendant Penguin Random House LLC*
*and for Gillian Flynn in connection with the Novel*

16

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on April 13, 2018 a true and correct copy of **Reply Brief in support of Motion of Defendants Penguin Random House LLC and Gillian Flynn to Dismiss First Amended Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: April 12, 2018

By: */s/ Linda Steinman*
    Linda Steinman
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone (212) 489-8230
Email: lindasteinman@dwt.com

17