**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LESLIE WELLER**, | ) | |
| | ) | Case No. 1:17-cv-08799 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. John Robert Blakey |
| | ) | |
| **GILLIAN FLYNN, PENGUIN RANDOM** | ) | |
| **HOUSE LLC d/b/a CROWN PUBLISHING** | ) | |
| **GROUP, BRUNA PAPANDREA, LAURA** | ) | |
| **JEANNE REESE WITHERSPOON, LESLIE** | ) | |
| **DIXON, TWENTIETH CENTURY FOX** | ) | |
| **FILM CORPORATION, AND DAVID** | ) | |
| **FINCHER**, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS
TWENTIETH CENTURY FOX FILM CORPORATION, BRUNA PAPANDREA,
LAURA JEANNE REESE WITHERSPOON, GILLIAN FLYNN, AND DAVID FINCHER
<u>TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     THE PARTIES AGREE THAT THE COURT CAN RESOLVE THIS MOTION BY COMPARING THE RELEVANT WORKS.................................................3

III.    THE RELEVANT WORKS ARE *OTB3* AND THE FILM................................3

      A.     Plaintiff's Claim Is Governed by the FAC, and She Cannot Sue for Infringement of an Unregistered Version of Her Work Never Mentioned in Her Pleadings.................................................................................3

      B.     Plaintiff's Claims Against the Film Defendants Must be Based on the Film, Not the Novel .................................................................................5

IV.    PLAINTIFF HAS NOT AND CANNOT PLAUSIBLY ALLEGE ACCESS TO SHOW ACTUAL COPYING ...........................................................................7

V.     PLAINTIFF'S CLAIM FAILS FOR THE INDEPENDENT REASON THAT THERE IS NO SUBSTANTIAL SIMILARITY IN PROTECTABLE EXPRESSION BETWEEN THE WORKS ....................................................11

      A.     The "Probative Similarity" Standard Does Not Apply in Determining Unlawful Appropriation............................................................................12

      B.     The Court May Not Disregard the Differences Between *OTB3* and the Film ......................................................................................................13

      C.     Plaintiff's "Unique Combination Of Unprotectable Elements" Theory Does Not Apply Here............................................................................13

VI.    *OTB3* AND THE FILM ARE NOT SUBSTANTIALLY SIMILAR...............15

VII.   CONCLUSION.............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ace Novelty Co. v. Superior Toy & Novelty Co.*,
  No. 83 C 5930, 1983 WL 1154 (N.D. Ill. Oct. 13, 1983) .........................................................10

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ..........................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................8

*Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*,
  672 F.2d 607 (7th Cir. 1982) ......................................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................8

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) .............................................................................10

*Carlson v. CSX Transp., Inc.*,
  758 F.3d 819 (7th Cir. 2014) .............................................................................................8

*Craig v. Dabrowski*,
  No. 98-C-405, 1999 WL 412581 (N.D. Ill. June 8, 1999)....................................................10

*Davis v. United Artist, Inc.*,
  547 F. Supp. 722 (S.D.N.Y. 1982).......................................................................................7

*Design Basics, LLC v. Lexington Homes, Inc.*,
  858 F.3d 1093 (7th Cir. 2017) ................................................................................... passim

*DiTocco v. Riordan*,
  815 F. Supp. 2d 655 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012)......................6

*Ekern v. Sew/Fit Co.*,
  622 F. Supp. 367 (N.D. Ill. 1985) .....................................................................................15

*FASA Corp. v. Playmates Toys, Inc.*,
  869 F. Supp. 1334 (N.D. Ill. 1994) ...................................................................................10

*Feist Publ'ns, Inc., v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991)............................................................................14

*Francescatti v. Germanotta*,
    No. 11 CV 5270, 2014 WL 2767231 (N.D. Ill. June 17, 2014).........................9

*Funky Films, Inc. v. Time Warner Entm't Co.*,
    462 F.3d 1072 (9th Cir. 2006) ...........................................................13

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999) ..........................................................10

*Hobbs v. John*,
    722 F.3d 1089 (7th Cir. 2013) ..............................................4, 12, 13, 14

*Incredible Techs. v. Virtual Techs.*,
    400 F.3d 1007 (7th Cir. 2005) .......................................................11, 12

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
    765 F. Supp. 1310 (N.D. Ill. 1990) .....................................................10

*JCW Invs., Inc. v. Novelty, Inc.*,
    482 F.3d 910 (7th Cir. 2007) ..........................................................9, 14

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003).................................................................10

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) ............................................................15

*Laureyssens v. Idea Grp., Inc.*,
    964 F.2d 131 (2d Cir. 1992)..............................................................12

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998)..............................................................14

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
    586 F. Supp. 1346 (C.D. Cal. 1984) .....................................................10

*Nash v. CBS, Inc.*,
    899 F.2d 1537 (7th Cir. 1990) ...........................................................11

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    975 F. Supp. 2d 920 (N.D. Ill. 2013) ...................................................12

*Peters v. West*,
  692 F.3d 629 (7th Cir. 2012) ...................................................................7, 9, 12

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009)...................................................................13

*Reed Elsevier v. Muchnick*,
  559 U.S. 154 (2010)...................................................................................4, 5

*Roulo v. Russ Berrie & Co.*,
  886 F.2d 931 (7th Cir. 1989) ............................................................................7

*Selle v. Gibb*,
  741 F.2d 896 (7th Cir. 1984) ........................................................................9, 10

*Sheldon Abend Revocable Tr. v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010)...........................................................6, 7, 13

*Theotokatos v. Sara Lee Pers. Prod.*,
  971 F. Supp. 332 (N.D. Ill. 1997) ......................................................................3

*Towler v. Sayles*,
  76 F.3d 579 (4th Cir. 1996) ........................................................................8, 9

## OTHER AUTHORITIES

17 U.S.C. § 411(a) .......................................................................................4

## I.      INTRODUCTION

In her opposition, Plaintiff barely attempts to rebut the extensive differences between her screenplay ("*OTB3*") and the *Gone Girl* film (the "Film") discussed at length in the Film Defendants' motion.[1]  Indeed—in an implied concession of the profound weakness of her claims—Plaintiff barely discusses the works at the center of this litigation *at all*.  Instead, Plaintiff seeks to create procedural confusion where none exists in an effort to distract from the vast differences between the works at issue.  Plaintiff's misdirection should not succeed.  Where—as here—even a cursory review of the works at issue reveals that there is no substantial similarity as a matter of law, dismissal with prejudice is appropriate on a Rule 12(b)(6) motion.

*First*, Plaintiff argues that *OTB3*—the copyrighted work alleged in the First Amended Complaint ("FAC") to have been infringed—is not the one the Court should read.  Instead, she attaches another version of her screenplay to her opposition brief that was never registered with the Copyright Office.  Setting aside her failure to identify this version when the Court gave her leave to amend her complaint, and that her new argument contradicts the FAC, Plaintiff is hoisted with her own petard because she has no standing to sue for infringement of an unregistered work.

*Second*, Plaintiff invents a non-existent legal standard to argue that—in analyzing her infringement claims against the Film—the Court should disregard the contents of the Film and instead hold the Film Defendants liable based on allegedly infringing content in the *Gone Girl novel* (the "Novel").  According to this theory, a derivative work such as the Film essentially inherits any infringing content in its antecedent work (*i.e.*, the Novel) even if that infringing content does not re-appear in the derivative work.  Setting aside the fact that there is no

---

[1] "Film Defendants" and/or "Fox Defendants" refers to moving defendants Twentieth Century Fox Film Corporation, Bruna Papandrea, Laura Jeanne Reese Witherspoon, Gillian Flynn, and David Fincher.

infringing content in *either* the Film *or* the Novel, Plaintiff's concocted legal theory should be disregarded because it is contradicted by basic copyright principles.

**Third**, Plaintiff's incoherent and improbable allegations as to how a copy of *OTB3* may have theoretically travelled to *Gone Girl* novelist Gillian Flynn cannot establish access. Plaintiff merely alleges that she is several degrees removed from Flynn through a series of loosely-associated individuals and organizations. She alleges that she gave a copy of *OTB3* to one acquaintance, but from that point forward her allegations amount to complete speculation about how *OTB3* may have changed hands from a script consultant to a book editor to an unknown number of people at one of two talent agencies connected to Flynn. As a result of Plaintiff's failure to plausibly allege access, infringement by the Film Defendants can only be established if *OTB3* and the Film share striking similarities—*i.e.*, similarities so striking that the only plausible explanation is that Flynn copied them from *OTB3*.

**Fourth**, Plaintiff asks the Court to ignore the lack of substantial similarity between the works by focusing on a more lenient and inapplicable "probative similarity" standard. Under controlling Seventh Circuit authority, the works are not substantially similar in protectable expression as a matter of law. Plaintiff also asks the Court to ignore the many differences between *OTB3* and the Film, even though the law says otherwise. And, finally, Plaintiff claims the Film infringes her unique selection and arrangement of otherwise unprotectable ideas, but she doesn't identify any particular arrangement of ideas in her work that was infringed and she doesn't cite any controlling authority applying the concept of a protectable arrangement of ideas in the context of a literary work.

For all of these reasons, discussed more fully below, the Court should dismiss the FAC with prejudice.

## II.     THE PARTIES AGREE THAT THE COURT CAN RESOLVE THIS MOTION BY COMPARING THE RELEVANT WORKS.

Plaintiff does not dispute that it is proper for the Court to conduct a side-by-side comparison of the works at issue at the pleading stage.  (*See* Dkt. 85, Plaintiff's Response in Opposition to Film Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Opp.") at 8 ("[C]ourts indeed may consider documents integral to a plaintiff's allegations that are not attached as exhibits to a complaint.").)  She also acknowledges that a copyright infringement claim can be dismissed on a Rule 12(b)(6) motion.  (*See* Opp. at 2 ("In copyright infringement cases, Federal courts use the same standard of review for Rule 12(b)(6) motions as they do for motions for summary judgment.").)  When comparing works at the pleading stage, "the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings." *Theotokatos v. Sara Lee Pers. Prod.*, 971 F. Supp. 332, 341 (N.D. Ill. 1997).

## III.     THE RELEVANT WORKS ARE *OTB3* AND THE FILM.

Faced with the impossible task of demonstrating how the Film is substantially similar to *OTB3*, Plaintiff tries to muddy the waters by claiming the Film Defendants are comparing "the wrong works."  (Opp. at 9.)  Plaintiff's efforts to create confusion should be ignored.

### A.  Plaintiff's Claim Is Governed by the FAC, and She Cannot Sue for Infringement of an Unregistered Version of Her Work Never Mentioned in Her Pleadings.

In her opposition brief, Plaintiff unveils a new version of her screenplay that she claims is the "more appropriate" version for the Court to review.  (Opp. at 1 n.1.)  This argument is a non-starter for several reasons.  ***First***, in both her initial Complaint and FAC, Plaintiff expressly alleges infringement only with respect to the version of her screenplay titled *OTB3* and bearing the Copyright Office Registration No. PAu 3-350-973.  (*See* Dkt. 55, FAC ¶¶ 16, 28-30, 49-82;

*see also* Dkt. 1, Compl. ¶¶ 22-25, 44-77.[2])  Indeed, *OTB3* is the *only* version of Plaintiff's screenplay as to which Plaintiff alleges Gillian Flynn had access (FAC ¶¶ 28-30); it is the *only* version as to which she alleges similarities to any of the Film Defendants' works (*id.* ¶¶ 49-82, 85); and it is the *only* version that she alleges as the basis of her infringement claim in Count I of her FAC (*id.* ¶¶ 100-106).  Plaintiff is bound by her FAC, which identifies *OTB3* as the allegedly infringed work that the Court must now review.  *See Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013) (the Court's Rule 12(b)(6) analysis is limited to Plaintiff's pleadings and documents that are "referred to in the plaintiff's complaint and are central to [her] claim.").

**Second**, if Plaintiff's FAC *had* alleged infringement of the unregistered version of her screenplay, this would have resulted in immediate dismissal because she cannot sue for copyright infringement of a work that is not registered with the Copyright Office.  *See* 17 U.S.C. § 411(a); *see also Reed Elsevier v. Muchnick*, 559 U.S. 154, 166 (2010).  As a matter of law, Plaintiff cannot base her infringement claims on the unregistered screenplay she attaches to her opposition brief.

**Third**, even if the unregistered version of Plaintiff's script had hypothetically been registered, it would be too late for Plaintiff to amend her complaint a second time.  Under the Court's Standing Order, a plaintiff that amends its complaint and then chooses to proceed against a subsequent motion to dismiss rather than "seek[ing] leave to amend its pleading again," will be denied any "further opportunity to amend the pleading *absent extraordinary circumstances*."  Standing Order of Judge John Robert Blakey on Motions to Dismiss, *available at*

---

[2] Plaintiff registered four different versions of her screenplay with the Copyright Office: (i) Registration No. TXu 1-283-974, registered 2/1/2006; (ii) Registration No. TXu 1-569-246, registered 8/20/2007; (iii) Registration No. PAu 3-350-973, registered 7/8/2008; and (iv) Registration No. PA 2-015-637, registered 1/29/2013.  However, her FAC only alleges copyright infringement of the version titled *OTB3* bearing Registration No. PAu 3-350-973.  (FAC ¶¶ 28-30, 49-81, 85, 100-106.)

http://www.ilnd.uscourts.gov (emphasis added).  Because the Film Defendants previously filed a

near-identical motion to dismiss Plaintiff's original Complaint that identified Plaintiff's relevant

work as *OTB3*, and because Plaintiff subsequently amended her Complaint without any

correction or modification of her claim that *OTB3* is the infringed work, it is clear that there are

no "extraordinary circumstances" to justify a second round of amendments.  *Id.*  Thus, if Plaintiff

now claims infringement of her unregistered version of the screenplay, her FAC should be

dismissed with prejudice.[3]

In short, the only allegedly infringed work that the Court may consider on this motion is

*OTB3*, which the Film Defendants obtained from the Copyright Office and have submitted to the

Court without any objection as to its authenticity from Plaintiff.  (*See* Dkt. 41-1, Singer Decl. Ex.

A (attaching deposit copy of Plaintiff's work bearing Registration No. PAu 3-350-973 along with

documents recording its receipt from the Copyright Office).)

**B.  Plaintiff's Claims Against the Film Defendants Must be Based on the Film, Not the Novel.**

Both in her pleadings and her opposition brief, Plaintiff barely attempts to articulate any

similarities between her screenplay and the Film.  Plaintiff's FAC only alleges similarities

between *OTB3* and Gillian Flynn's Novel, followed by a conclusory allegation that "the Film

contains many of the same striking and substantial similarities to *OTB3*."  (FAC ¶ 82.)  Now, in

response to the Film Defendants' extensive side-by-side comparison between *OTB3* and the

Film, Plaintiff fails to rebut the overwhelming differences between the works articulated by the

---

[3] Moreover, Plaintiff fails to articulate any differences between this new version and *OTB3* that would impact the Court's analysis.  This is because the versions are basically the same—aside from minor dialogue changes and a few scenes cut and added here and there, the narrative arc and characters are for the most part identical.  The plot description of *OTB3* in the Film Defendants' motion applies equally to all of the various versions of Plaintiff's screenplay.  (*See* Dkt. 74, Film Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Film Defendants' MTD") at 2-6.)  A claim based on the new version of *OTB3* would be dismissed for the same reasons a claim based on *OTB3* should be dismissed.

Film Defendants. Instead, Plaintiff invents a legal theory out of whole cloth to avoid engaging with the Film altogether. She argues that the Court should disregard the contents of the Film and instead hold the Film Defendants liable based on allegedly infringing content in the *Novel*. Setting aside the fact that there is no infringing content in *either* the Film *or* the Novel, Plaintiff's concocted legal theory should be ignored because it is contradicted by well-settled law.[4]

According to Plaintiff's made-up legal test, where—as here—the allegedly infringing Film is a derivative work of the Novel, the Court should *not* compare the Film to Plaintiff's screenplay, but should instead compare the Novel to Plaintiff's screenplay. Plaintiff's theory is that, "because the original point of infringement occurred when the Novel was written," any "downstream derivative work of the Novel" is therefore automatically an infringing work so long as it "incorporates *any* protectable expression contained in OTB." (Opp. at 9 (emphasis in original).) In other words, a derivative work inherits the infringing content that exists in any of its antecedent works, even if that infringing content does not re-appear in the derivative work. Plaintiff announces this imaginary principle without citation to any legal authority.

Plaintiff's new test for copyright infringement by derivative works is directly contradicted by basic copyright principles. It is well-settled that the relevant comparison in a copyright infringement action is between the plaintiff's work on the one hand and the defendant's allegedly-infringing work on the other. *See Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017); *see also Sheldon Abend Revocable Tr. v.*

---

[4] Plaintiff's recognition of the weakness of her claims against the Film is revealed by her admission that the Film contains fewer alleged similarities to her work as compared to the Novel. (*See* Opp. at 9 ("As is typical with adaptations, with each iteration of copying of OTB's unique features, fewer and fewer similarities were incorporated into downstream derivative works.").) In fact, none of the various iterations of *Gone Girl* contain any protectable expression from Plaintiff's screenplay. (*See* Film Defendants' MTD at 1-6, 13-20; *see also* Dkt. 71, Memorandum of Law in Support of Motion of Defendant Penguin Random House LLC to Dismiss First Amended Complaint at 9-19.)

*Spielberg*, 748 F. Supp. 2d 200, 204 (S.D.N.Y. 2010) ("A determination of copyright infringement requires a side-by-side comparison *of the disputed works themselves*." (emphasis added)); *see DiTocco v. Riordan*, 815 F. Supp. 2d 655, 673 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012) (where plaintiff alleged infringement by a series of novels and their derivative film, the court conducted an independent side-by-side analysis for the derivative film).  For the same reason, there is no cognizable basis for imposing liability on copyright defendants for their published works based on allegedly-infringing content in earlier versions of those works.  *Davis v. United Artist, Inc.*, 547 F. Supp. 722, 724 n.9 (S.D.N.Y. 1982) ("Since the ultimate test of infringement must be the film as produced and broadcast, we do not consider the preliminary scripts.").[5]  Nor is there a special "*any* protectable expression" threshold for infringement by derivative works—the test is whether there is access and *substantial* similarity in protectable expression.  *Design Basics*, 858 F.3d at 1099 (reiterating that the works must be "substantially similar" for a finding of copying) (citing *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012)); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989) (the proper inquiry is whether the defendant "appropriated the 'total concept and feel' of [the plaintiff's work], *rather than a few distinct protected elements*" (emphasis added)).  Accordingly, the Court must evaluate the Film itself when deciding the Film Defendants' motion.

## IV.  PLAINTIFF HAS NOT AND CANNOT PLAUSIBLY ALLEGE ACCESS TO SHOW ACTUAL COPYING.

"The Copyright Act affords no protection against the independent creation of a work that happens to resemble some prior creation.  A plaintiff must prove that the defendant actually

---

[5] Accordingly, the Court should also reject Plaintiff's unsupported assertion that "the Film Defendants' potential liability for copyright infringement would begin with the very first draft of the screenplay of *Gone Girl* written by Flynn" (Opp. at 8-9).  *See Sheldon Abend*, 748 F. Supp. 2d at 205 n.4 (stating that "earlier drafts of a book, manuscript, or screenplay are irrelevant").

copied its original work." *Design Basics*, 858 F.3d at 1099. A plaintiff may prove copying by showing that the defendant had "access" to plaintiff's work and that the two works are substantially similar, thus permitting an inference that the defendant actually did copy the original. *Id.* at 1100. In addition to showing actual copying of her work, a plaintiff must also show unlawful appropriation, meaning the works are substantially similar in protectable expression. *Id.* at 1101. In this section we address Plaintiff's failure to plausibly plead actual copying because she has not and cannot plead defendants' access to *OTB3*, nor is this the unusual case where a plaintiff can overcome a lack of access by showing there is such "striking similarity" between the relevant works that the "only plausible explanation" is copying by the defendant. *Id.* at 1100. In Sections V and VI, we address Plaintiff's additional failure to establish substantial similarity of protectable expression, which is independently fatal to her infringement claim.

As with all allegations analyzed under the federal pleading standard, Plaintiff's alleged theory of access "must be plausible rather than merely conceivable or speculative" to survive the pleading stage. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Accordingly, it is well-settled that, to show access, a plaintiff must do more than present a "tortious [sic] chain of hypothetical transmittals." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (explaining that a "mere possibility that . . . opportunity [to view or copy plaintiff's work] could have arisen will not suffice").

Here, Plaintiff does not even come close to the threshold required to plausibly allege access. Plaintiff alleges that she sent *OTB3* to a script consultant (Pilar Alessandra) (FAC ¶¶ 28-30), who once contributed to an unrelated book series that was in turn edited by non-party Sherry

Ellis who died in 2011 and who was also represented by the same talent agency as Gillian Flynn (*id.* ¶¶ 31-33). Plaintiff never explains how her *OTB3* script supposedly made its way from Alessandra to Ellis to someone at the Levine Greenberg agency to Flynn's agent (Stephanie Kip Rostan) to Flynn.

Plaintiff argues that these allegations "establish[] the existence of a channel of communication" between herself and Flynn sufficient to support an opportunity of access. (Opp. at 3-4.) However, the authority Plaintiff cites for this proposition makes clear that a "channel of communication" is sufficient to establish access only where the allegations of access—unlike Plaintiff's—"surpass[] the threshold of mere conjecture or speculation." *Francescatti v. Germanotta*, No. 11 CV 5270, 2014 WL 2767231, at *4 (N.D. Ill. June 17, 2014) (access plausibly alleged where plaintiff collaborated on her song with a sound engineer and bassist who then collaborated with defendant Lady Gaga on the album containing the song that allegedly infringed plaintiff's). Other cases cited by Plaintiff on this issue make clear that Plaintiff does not come close to satisfying her burden to plausibly allege access.[6]

Indeed, courts regularly reject access theories as implausible even where there are allegations that the work was transmitted to defendant by way of a single individual or organization—as opposed to the numerous hypothetical intermediaries in the long, speculative

---

[6] Plaintiff cites *Design Basics* for the proposition that the access requirement is "not onerous." (Opp. at 3 (citing 858 F.3d at 1099-100).) But she omits the *Design Basics* court's subsequent list of examples illustrating that the standard requires a far greater showing of access than is present here. *See Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) (access is plausibly alleged where plaintiff's work is "sent directly to the defendant . . . or a close associate of the defendant"); *Peters*, 692 F.3d at 634 (defendant's "close collaboration" with his business manager who had a copy of plaintiff's recording); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007) (officer of corporate defendant admitted that "he saw and perhaps photographed" plaintiff's doll which gave him the idea for the accused work). And in *Design Basics*, the Seventh Circuit held the plaintiff *failed* to make a sufficient showing of defendant's access to plaintiff's allegedly infringed architecture plans where there was "no evidence that [the plaintiff] ever sent any plans or plan catalogs directly to [the defendant]," and where plaintiff instead alleged that it had sent its plans to the homebuilders association to which defendant belonged. 858 F.3d at 1105-108.

9

chain of access alleged by Plaintiff.  *See, e.g.*, *Towler*, 76 F.3d at 582 (no plausible allegation of access where the plaintiff allegedly gave her screenplay to an associate of the defendant who in turn promised to send it to the defendant where there was no evidence screenplay was ever sent); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1252 (11th Cir. 1999) (establishing an inference of access "requires more than a mere allegation that someone known to the defendant possessed the work in question"); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1057-59 (C.D. Cal. 2010) (the receipt of plaintiff's work by one talent agent was insufficient to establish that another agent at the same firm had a reasonable opportunity to access the work; the fact that the two agents worked on the same office floor and had known each other for a decade only "raise[d] the theoretical possibility" that they shared or discussed the plaintiff's work and this "pure speculation" does not establish access).[7]

Because Plaintiff does not come close to satisfying her burden on the question of access, her claim of actual copying can only be saved by evidence of "striking similarity" between *OTB3* and the Film, which means the two works are so alike that their similarities "cannot satisfactorily be accounted for by . . . any theory other than that of copying."  *Selle*, 741 F.2d at 904; *Design Basics*, 858 F.3d at 1100 (striking similarity may function as a proxy for access only in "unusual cases," more specifically "in the rare case involving an uncanny resemblance for which copying the plaintiff's work *is the only plausible explanation*" (emphasis added)).  Striking similarity typically involves exact or near-exact copying.[8]  For the reasons discussed in the Film

---

[7] *See also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52 (2d Cir. 2003) (rejecting plaintiff's claim that the mailing of tapes to a corporation could "be equated with access" where there was no evidence that the tapes were ever received or forwarded to the alleged infringers); *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984) (rejecting the notion that the "bare corporate receipt" of plaintiff's work by a studio is sufficient to establish access by an individual working at the studio).

[8] *See, e.g.*, *Craig v. Dabrowski*, No. 98-C-405, 1999 WL 412581, at *4-5 (N.D. Ill. June 8, 1999) (finding striking similarity where two plans for a single family home were "virtually identical"); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1353, 1356 (N.D. Ill. 1994) (finding striking similarity where an

Defendants' motion, and as will quickly become apparent to the Court once it reads *OTB3* and watches the Film, the works are not substantially similar let alone strikingly similar.

Finally, even if Plaintiff's access allegations are deemed plausible, Plaintiff's claim that the Film infringes her work still fails for lack of substantial similarity as a matter of law because *OTB3* and the Film are profoundly different works that do not share *any* similarity in protectable expression. *See* Section VI, *supra*.

## V. PLAINTIFF'S CLAIM FAILS FOR THE INDEPENDENT REASON THAT THERE IS NO SUBSTANTIAL SIMILARITY IN PROTECTABLE EXPRESSION BETWEEN THE WORKS.

The question of substantial similarity is easy to resolve where—as here—the works at issue are profoundly different and do not share anything close to protectable expression. To assess substantial similarity, courts in the Seventh Circuit apply the "ordinary observer test," which asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression. . . ." *Design Basics*, 858 F.3d at 1101.[9] It is key that the similarities between the works must be similarities in protectable expression, because "despite what the ordinary observer might see, the copyright laws preclude appropriation of only those elements of the work that are protected by copyright." *Incredible Techs. v. Virtual Techs.*, 400 F.3d 1007,

---

infringing toy was "a virtual replica" of plaintiff's toy); *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1330 (N.D. Ill. 1990) (finding striking similarity between computer systems that shared "absolute identity."); *Ace Novelty Co. v. Superior Toy & Novelty Co.*, No. 83 C 5930, 1983 WL 1154, at *3, *5 (N.D. Ill. Oct. 13, 1983) (finding striking similarities where two stuffed bears were "virtually indistinguishable.").

[9] The "ordinary observer test" is "an objective one" that calls upon the judge to apply a "reasonable person" standard rather than subjective opinions. *Design Basics*, 858 F.3d at 1101; *see also Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir. 1990) ("Ordinary observers, like reasonable men in torts, are fictitious characters of the law, reminders that judges must apply objective tests rather than examine their own perceptions."). Plaintiff's attempt to introduce the subjective impressions of certain unnamed "script readers" is inappropriate for this reason, and also because these purported comments from Plaintiff's acquaintances were never mentioned in her pleadings. (Opp. at 14 n.5.)

1011 (7th Cir. 2005). As a result, when deciding substantial similarity, "unprotected, or unprotectable, elements of the work in question, even those that 'are most significant and most clearly similar,' are not taken into account." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 927 (N.D. Ill. 2013) (quoting *Incredible Techs.*, 400 F.3d at 1012); *see also Hobbs*, 722 F.3d at 1095 (courts must disregard unprotectable *scènes à faire*, or "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic"). The Court must compare the works at issue—not descriptions of the works—by looking to the "pattern of the work, . . . the sequence of events, . . . [and] the development of the interplay of characters." *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 n.8 (7th Cir. 1982). As the Seventh Circuit has explained, if two works "simply tell different stories," they cannot be substantially similar in protectable expression. *Hobbs*, 722 F.3d at 1096.

### A. The "Probative Similarity" Standard Does Not Apply in Determining Unlawful Appropriation.

In her discussion of the standard for substantial similarity, Plaintiff repeatedly refers to "probative similarity" as a relevant benchmark in the Court's analysis, and suggests this aspect of the analysis imposes a lower burden because "probative similarity" need "not be substantial." (Opp. at 8 (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)); *see also* Opp. at 8, 10, 13.) That is a standard some courts use to determine if there can be an inference of actual copying; it is *not* the test for unlawful appropriation of copyrightable expression. *Peters*, 692 F.3d at 633. Contrary to Plaintiff's suggestion, the Seventh Circuit does not apply "probative similarity" to determine substantial similarity. *Id.* Rather, in the Seventh Circuit,

> When considering substantial similarity, it is essential to focus on *protectable* expression. Similarity by itself—even close similarity—should not automatically spark an inference of unlawful copying. Countless ideas, themes, images, and even home designs crowd the public domain. They are available to all: no one can claim a copyright in an expression in the public domain.

*Design Basics*, 858 F.3d at 1101.

Therefore, a claim for infringement should be dismissed on a Rule 12 motion where, as here, the defendant's work is not "substantially similar" to the protectable expression in the plaintiff's work. *Hobbs*, 722 F.3d at 1094 (dismissing infringement claim on Rule 12 motion).

### B. The Court May Not Disregard the Differences Between *OTB3* and the Film.

Plaintiff also suggests that the Film Defendants' are wrong to "focus on the dissimilarities" between the works because "[t]he existence of differences does not negate the existence or extent of similarities." (Opp. at 15.) To be clear, it is well-settled that "in considering the question of substantial similarity, an analysis of both the similarities and the differences is appropriate." *Sheldon Abend*, 748 F. Supp. 2d at 205. This is because "'numerous differences tend to undercut substantial similarity.'" *Porto v. Guirgis*, 659 F. Supp. 2d 597, 609 (S.D.N.Y. 2009); *see also Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (noting that "[a]t first blush, the[] apparent similarities in plot appear significant; however, an actual reading of the two works reveals greater, more significant differences and few real similarities at the levels of plot characters, themes, mood, pace, dialogue or sequence of events."). While Plaintiff's authority makes clear that "minor differences" can be overlooked where they are outweighed by more meaningful similarities in protectable expression, *Atari*, 672 F.2d at 619, here it is the differences between the works that far outweigh Plaintiff's allegations of superficial similarities in unprotectable content. The Court's focus on these differences is not only proper, it is necessary.

13

### C.     Plaintiff's "Unique Combination Of Unprotectable Elements" Theory Does Not Apply Here.

Recognizing there are no similarities in protectable expression between *OTB3* and the Film, Plaintiff attempts to rescue her copyright claims by arguing that "even if none of the plot elements alleged by a plaintiff are remarkably unique by themselves," there can still be protection for "a unique combination of elements that are not individually copyrightable." (Opp. at 11.) In making this assertion, Plaintiff relies on a line of cases that originated from and has been applied almost exclusively to a narrow set of circumstances where the allegedly infringed work constituted a unique arrangement of uncopyrightable facts, a sequence of computer code, and other discrete patterns that typically involve exact copying of unprotectable elements. *See*, *e.g.*, *Hobbs*, 722 F.3d at 1093 n.4 (expressly declining to endorse this theory of protectable expression, but acknowledging its application in cases involving exact or near-exact copying of a telephone book, lines of software code, fabric patterns, and other designed objects). Plaintiff does not cite any controlling authority applying this theory of protectable expression in the context of literary works.

These cases do not disrupt the fundamental principle that only *expression* is protectable. Rather, they hold that *an arrangement itself* can "form an original expression entitled to copyright protection." *Id*. However, under these narrow circumstances the protection afforded to an "original selection or arrangement" of unprotectable elements is inherently "thin," and only applies to the particular arrangement itself—not to the underlying unprotectable elements within that arrangement. *Feist Publ'ns, Inc., v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348-49 (1991). Moreover, infringement is almost exclusively found only in cases involving near-identical copying of the particular arrangement at issue. *See, e.g.*, *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 705 (2d Cir. 1998) ("[N]othing short of extensive verbatim copying will

14

amount to infringement of a compilation."); *JCW Invs.*, 482 F.3d at 916 (finding protection of the combination of visual elements in two dolls where "the execution and combination of features on both dolls would lead an objective observer to think they were the same").

Plaintiff never articulates any protectable pattern or sequence of elements in *OTB3* that also appears in the Film. (Opp. at 11.) Nor does she attempt to rebut the fundamental differences between the sequence of events in *OTB3* and the Film discussed at length in the Film Defendants' motion. (*See* Film Defendants' MTD at 15-16.) Plaintiff's effort to convince the Court that elements in *OTB3* that are "not individually copyrightable" can nonetheless merit protection is both a misleading characterization of the law and a tacit acknowledgement that none of the scattered similarities alleged by Plaintiff constitute protectable expression. *See, e.g.*, *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (a "compilation of 'random similarities scattered throughout the works'" does not merit copyright protection).[10]

## VI. *OTB3* AND THE FILM ARE NOT SUBSTANTIALLY SIMILAR.

*OTB3* and the Film are profoundly different works under every metric of protectable expression. (*See* Film Defendants' MTD at 1-6, 13-20.) Rather than respond to the Film Defendants' discussion of the works, Plaintiff avoids dealing with the works almost entirely.

In the rare instance when Plaintiff responds to the Film Defendants' arguments regarding the differences between the works, her responses are conclusory. For example, the Film Defendants spent more than a page in their motion rebutting the alleged similarities between the lead characters of Amy/Mary and Nick/Steve, as well as explaining why certain alleged

---

[10] Plaintiff also alleges that the Film Defendants have copied her "Idiosyncratic Authorial Choices". (Opp. at 12.) The Film Defendants have not found any case in any jurisdiction—published or unpublished—that has ever defined or applied this terminology or concept. On the contrary, it is well established that a style is not protectable. *Ekern v. Sew/Fit Co.*, 622 F. Supp. 367, 369 (N.D. Ill. 1985) ("Copyright provides no protection to such broad areas as . . . writing styles"). Regardless, there is no substantiation for Plaintiff's claimed similarity.

similarities involving these characters constitute unprotectable *scènes à faire*. (*See* Film

Defendants' MTD at 14 n.6, 17-18.) In response, Plaintiff offers the following boilerplate:

"Plaintiff has set forth extensive lists of similarities between the female leads and the male leads

of OTB and the Novel, (*see* FAC ¶¶ 67-68), which similarities takes these characters well

beyond *scènes à faire* and make them sufficiently distinctive so as to be copyrightable." (Opp. at

12.) Plaintiff's rote response betrays the fundamental weakness of her claims.

      In the end, Plaintiff spends a *just a third of a page* in her 17-page opposition brief

actually comparing the substance of the works themselves (as compared to 12 pages in the Film

Defendants' brief). (*See* Opp. at 13 n.8; Opp. at 16; *cf.* Film Defendants' MTD at 1-6, 13-20.) If

anything, the few examples of alleged similarity highlighted in Plaintiff's brief actually *support*

the Film Defendants' motion to dismiss. For example, in one footnote Plaintiff conducts a side-

by-side analysis of the opening moments in *OTB3* and the Film to show that both works "open

with a question of how well one person can really know another person" while showing "an

image of the female lead's head." (Opp. at 13.)

      This comparison, when actually examined, illustrates how the same unprotectable *idea*

can be *expressed* in two completely different ways, specifically (i) in the Film, Nick is shown

stroking the back of Amy's hair in a placid moment during better times in their relationship,

whereas *OTB3* begins with a close-up of Mary alone in her car just after she has been in a violent

crash (Dkt. 41-1, Singer Decl. Ex. A at 6; *cf.* Dkt. 41-2, Singer Decl. Ex. B at 00:25); (ii) in the

Film, the shot is focused on the back of Amy's head whereas in *OTB3* the shot is of Mary's "face

. . . covered in blood" (*id.*); (iii) the shot of the back of Amy's head is the very first image in the

Film and is shown from Nick's point of view, whereas in *OTB3*, the text of the direction

indicates that the camera will show the exterior of Mary's SUV "at dead rest in a nest of broken

foliage" before switching to a frontal close-up of Mary's face (*id.*); (iv) in the Film, the shot ends with Amy turning her head around to look at Nick (*i.e.*, directly at the camera) with an inscrutable expression, whereas in *OTB3* Mary "gazes through the broken windshield" at a bird flapping its wings before her hand "jerks slightly" and then "stops moving" (*id.*); (v) in the Film, Nick's POV shot is accompanied by his voiceover narration in which he uses ambiguously violent language to describe "cracking [Amy's] lovely skull" and "unspooling her brain" before asking "What are you thinking? How are you feeling? What have we done to each other?", whereas in *OTB3* Mary's mother (who is not in the scene shown on camera) is heard in voiceover asking, "Do you ever really know anyone? I mean, deep down, do you really know? . . . You haven't been together very long.  Mary, are you listening?" (*id.*); and (vi) in the Film, the opening shot captures a moment removed from the story's timeline which later reappears as the Film's closing shot in an unsettling bookend, whereas in *OTB3* the opening shot teases a central plot point that is then replayed when the scene occurs in the middle of *OTB3*'s timeline. Thus, what Plaintiff claims to be a similarity in expression is in fact a generic idea that is expressed in completely different ways by *OTB3* and the Film (*i.e.*, the idea of one spouse not knowing with certainty what the other is thinking).

Plaintiff also mischaracterizes the works to make dissimilar elements seem similar.  For example, Plaintiff argues that in both works "the husband's suspiciously dangerous and dismissive behavior [is] represented in the diary of flashbacks of their married life."  (Opp. at 16.)  In fact, no "diary" appears at any point in *OTB3*, nor are there any "flashbacks"—the opening scene is "flash forward" and there is a seven-year time lapse during Mary's coma, but all other scenes in Plaintiff's screenplay are presented in a linear fashion.  Plaintiff also claims the works are similar because both involve "the discovery that the wife had been purportedly

17

pregnant." (*Id.*)  However, in *OTB3* this idea is expressed by Mary *actually* being pregnant and giving birth while in a coma.  On the other hand, in the Film, Amy initially fakes being pregnant to garner sympathy from the media and public when she stages her violent kidnapping.  Later, Amy secretly gets pregnant using her husband's frozen sperm from a fertility clinic.  The unprotectable idea of an unknown pregnancy is expressed in the two works in completely different ways.

***

Plaintiff's anemic examples of supposed similarities in protectable expression make clear why she works so hard to avoid discussing the substance of the works themselves; the works are not substantially similar as a matter of law.[11]

## VII.   CONCLUSION

The Film Defendants respectfully request that the Court dismiss with prejudice Plaintiff's claim for direct copyright infringement against defendants Twentieth Century Fox Film Corporation, Gillian Flynn, and David Fincher, as well as Plaintiff's claim of vicarious copyright infringement against defendants Twentieth Century Fox Film Corporation, Bruna Papandrea, and Laura Jeanne Reese Witherspoon.

---

[11] Plaintiff's vicarious infringement claim also fails as a matter of law because she cannot establish direct infringement.  *See In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003).

Dated:  April 12, 2018                    Respectfully submitted,

                                          TWENTIETH CENTURY FOX FILM
                                          CORPORATION, BRUNA PAPANDREA,
                                          LAURA JEANNE REESE WITHERSPOON,
                                          GILLIAN FLYNN & DAVID FINCHER

                                          By:        /s/ Richard L. Stone

                                                JENNER & BLOCK LLP
                                                Richard L. Stone (*pro hac vice*)
                                                David R. Singer (*pro hac vice*)
                                                Andrew G. Sullivan (*pro hac vice*)
                                                633 West 5th Street
                                                Suite 3600
                                                Los Angeles, California 90071
                                                Tel: (213) 239-2203
                                                Fax: (213) 239-5199

                                                Ashley M. Schumacher
                                                Laura L. Norris
                                                353 North Clark Street
                                                Chicago, Illinois 60654
                                                Tel: (312) 840-8672
                                                Fax: (312) 840-7776

                                          *Attorneys for Defendants Twentieth Century Fox
                                          Film Corporation, Bruna Papandrea, Laura
                                          Jeanne Reese Witherspoon, Gillian Flynn, and
                                          David Fincher*

19

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on April 12, 2018, a true and correct copy of **Reply Memorandum of Law in Support of Motion of Defendant Twentieth Century Fox Film Corporation, Bruna Papandrea, Laura Jeanne Reese Witherspoon, Gillian Flynn, and David Fincher to Dismiss First Amended Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: April 12, 2018

By:        /s/ Ashley M. Schumacher
Ashley M. Schumacher
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: (312) 840-8672

*Attorney for Defendants Twentieth Century Fox Film Corporation, Bruna Papandrea, Laura Jeanne Reese Witherspoon, Gillian Flynn, and David Fincher*