**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LESLIE WELLER**, | ) |
| Plaintiff, | ) Case No. 1:17-cv-08799 ) ) |
| v. | ) ) Hon. John Robert Blakey |
| **GILLIAN FLYNN, PENGUIN RANDOM HOUSE LLC d/b/a CROWN PUBLISHING GROUP, BRUNA PAPANDREA, LAURA JEANNE REESE WITHERSPOON, LESLIE DIXON, TWENTIETH CENTURY FOX FILM CORPORATION, AND DAVID FINCHER**, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS
LAURA JEANNE REESE WITHERSPOON AND BRUNA PAPANDREA'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

I. PLAINTIFF HAS FAILED TO MAKE A PRIMA FACIE SHOWING FOR PERSONAL JURISDICTION. ..................................................................................... 2

    A. Plaintiff Has Not Shown that Witherspoon and Papandrea Purposefully Directed Their Activities at Illinois or Purposefully Availed Themselves of the Privilege of Conducting Business in Illinois. ................................................. 5

    B. Plaintiff Has Not Shown and Cannot Show that Her Alleged Injury Arose out of Witherspoon and Papandrea's Activities in Illinois. .................................... 9

    C. Plaintiff Has Not Shown that the Court's Exercise of Personal Jurisdiction Would Comport with Fair Play and Substantial Justice. ....................................... 10

II. JURISDICTIONAL DISCOVERY IS NOT WARRANTED. .......................................... 11

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Jackson*,
　218 F. Supp. 2d 1006 (N.D. Ind. 2002) ..................................................................................2, 3

*Andersen v. Sportmart, Inc.*,
　179 F.R.D. 236 (N.D. Ind. 1998) ...............................................................................................13

*Boustead v. Barancik*,
　151 F.R.D. 102 (E.D. Wis. 1993) ...............................................................................................13

*Bristol-Meyers Squibb Co. v. Superior Court*,
　137 S. Ct. 1773 (2017) ..................................................................................................................3

*Ciolli v. Iravani*,
　625 F. Supp. 2d 276 (E.D. Pa. 2009) .........................................................................................13

*Ctr. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
　230 F.3d 934 (7th Cir. 2000) .......................................................................................................12

*Durham v. Katzman, Wasserman & Bennardini*,
　375 F. Supp. 2d 495 (S.D. Miss. 2005)...................................................................................7, 8

*ESCO Corp. v. Cashman Equip. Co.*,
　65 F. Supp. 3d 626 (C.D. Ill. 2014) ..............................................................................................3

*Frerck v. John Wiley & Sons, Inc.*,
　No. 11-cv-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ...................................................4

*GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*,
　565 F.3d 1018 (7th Cir. 2009) ..............................................................................................2, 4, 5

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
　199 F.3d 1343 (D.C. Cir. 2000) .................................................................................................13

*Horizon Comics Prod. v. Marvel Entm't, LLC*,
　No. 15-11684, 2016 WL 526145 (D. Mass. Feb. 9, 2016) .......................................................10

*Illinois v. Hemi Grp. LLC*,
　622 F.3d 754 (7th Cir. 2010) .........................................................................................................7

*Images of the World, Inc. v. Cont'l Am. Indus.*,
　No. 04 C 7002, 2005 WL 2171193 (N.D. Ill. Aug. 30, 2005)..................................................10

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ................................................................................................... 13

*In re Stillwater Capital Partners Inc. Litig.*,
    851 F. Supp. 2d 556 (S.D.N.Y. 2012) .................................................................................... 13

*Maverick Entm't Grp., Inc. v. Does 1-2,115*,
    810 F. Supp. 2d 1 (D.D.C. 2011) ........................................................................................... 13

*MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*,
    224 F. Supp. 3d 621 (N.D. Ill. 2016) ....................................................................................... 8

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ................................................................................................ 2, 5

*Nordica USA Corp. v. Ole Sorensen*,
    475 F. Supp. 2d 128 (D.N.H. 2007) .................................................................................. 13, 14

*Palnik v. Westlake Entm't Inc.*,
    344 F. App'x 249 (6th Cir. 2009) ........................................................................................... 10

*Pentwater Equity Opportunities Master Fund, Ltd. v. Baker, Donelson, Bearman,
    Caldwell & Berkowitz, P.C.*,
    No. 15-CV-1885, 2016 WL 6476541 (N.D. Ill. Nov. 2, 2016) .............................................. 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................................... 4

*Sullivan v. Sony Music Entm't*,
    No. 14 CV 731, 2014 WL 5473142 (N.D. Ill. Oct. 29, 2014) ................................................ 13

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
    27 F. Supp. 3d 883 (N.D. Ill. 2014) ......................................................................................... 3

*Ticketreserve, Inc. v. viagogo, Inc.*,
    656 F. Supp. 2d 775 (N.D. Ill. 2009) ................................................................................ 12, 13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) .................................................................................................. 13

*Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*,
    No. 07 C 3641, 2008 WL 4104357 (N.D. Ill. Aug. 25, 2008) ................................................. 5

*United Airlines, Inc v. Zaman*,
    152 F. Supp. 3d 1041 (N.D. Ill. 2015) ..................................................................................... 3

Plaintiff Leslie Weller has failed to establish contacts with Illinois that support this Court's exercise of personal jurisdiction over Laura Jeanne Reese Witherspoon and Bruna Papandrea, neither of whom had any contact with Illinois in connection with Plaintiff's claim against them. In her response brief, Plaintiff points to a phone call between Witherspoon, Papandrea, and Gillian Flynn (the author of the *Gone Girl* novel) to argue that jurisdiction is proper. But that phone call did not give rise to Witherspoon and Papandrea's alleged vicarious copyright infringement, *i.e.*, their supposed supervision over the production and distribution of the *Gone Girl* film (the "Film"). As explained in Witherspoon and Papandrea's sworn declarations, the call with Flynn did not lead to the deal through which Twentieth Century Fox Film Corporation ("Fox") obtained the exclusive rights to make the allegedly infringing novel into the Film. And, after that deal was reached between Fox and Flynn, both Witherspoon and Papandrea had very limited roles with respect to the Film. They were not involved in writing the screenplay or making any creative contributions to the storyline depicted in *Gone Girl*, and they had no control or supervision over the production and distribution of the Film. The minimal involvement Witherspoon and Papandrea did have took place entirely outside of Illinois.

This lawsuit does not arise from any statement made on any phone call between Witherspoon, Papandrea, and Flynn or anyone else in Illinois. Indeed, the phone call with Flynn does not form the basis of Plaintiff's copyright infringement action against any named defendant, let alone support her claim for vicarious copyright infringement against Witherspoon and Papandrea. And because Plaintiff's vicarious copyright infringement claim does not otherwise "directly arise out of the specific contacts between the defendant[s] and the forum," as it must for

1

the Court to exercise personal jurisdiction, *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009), the claim should be dismissed.[1]

Additionally, Plaintiff has failed to identify any actual outstanding issues of fact as to Witherspoon and Papandrea's contacts with Illinois that would warrant jurisdictional discovery. Accordingly, her request for jurisdictional discovery should be denied.

## I. PLAINTIFF HAS FAILED TO MAKE A PRIMA FACIE SHOWING FOR PERSONAL JURISDICTION.

For a court to exercise specific personal jurisdiction over a defendant, "the action must ***directly arise out of the specific contacts*** between the defendant and the forum state." *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1024 (emphasis added). That is, (1) the defendant must have purposefully directed her activities at the forum state or purposefully availed herself of the privilege of conducting business in that state, (2) the alleged injury must arise out of the defendant's forum-related activities, and (3) the exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).

In her response brief, Plaintiff relies on a Northern District of Indiana case stating that "[t]here is no requirement that a complaint include facts conclusively establishing the existence of personal jurisdiction." (Resp. at 3-4 (quoting *Adams v. Jackson*, 218 F. Supp. 2d 1006, 1009 (N.D. Ind. 2002)).) While the *Adams* court observes as much, it goes on to explain that, once a defendant challenges personal jurisdiction, the plaintiff must make a prima facie showing of the court's personal jurisdiction, *Adams*, 218 F. Supp. 2d at 1009, and she must do so with respect to

---

[1] Plaintiff concedes that Witherspoon and Papandrea are not subject to general jurisdiction in Illinois. (Dkt. 83, Plaintiff's Response to Defendants Laura Jeanne Reese Witherspoon and Bruna Papandrea's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction ("Resp.") at 4.)

2

each defendant individually. *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017); *see also ESCO Corp. v. Cashman Equip. Co.*, 65 F. Supp. 3d 626, 631 (C.D. Ill. 2014) (explaining that it is "not permissible to base personal jurisdiction on the defending parties' aggregate forum contacts"). In particular, the plaintiff "has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *United Airlines, Inc v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015) (Blakey, J.); *see also Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 892 (N.D. Ill. 2014) (explaining that plaintiffs "may not merely rest on the allegations" once a defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction). Further, "[u]nrefuted facts in [a d]efendant's affidavits . . . will be taken as true." *United Airlines*, 152 F. Supp. 3d 1041 at 1045.

      Witherspoon and Papandrea both submitted unambiguous and unrefuted declarations attesting their complete lack of contacts with Illinois related to the claims against them in the first amended complaint. As Plaintiff herself recognizes, the *Adams* court accepted as true the complaint allegations related to injury in the forum state "in the absence of [the defendant's] affidavit." 218 F. Supp. 2d at 1011; (*see also* Resp. at 4). But that is not the case here, and Plaintiff has not disputed Witherspoon and Papandrea's declarations nor challenged either defendant's credibility. Instead, Plaintiff only proffers a video excerpt and five articles, none of which present any contradictory evidence regarding Witherspoon and Papandrea's contacts with

3

Illinois or their lack of control or supervision over the Film's production and distribution.[2] Plaintiff has otherwise failed to identify any additional evidence that she would need to support the Court's exercise of personal jurisdiction over Witherspoon and Papandrea in connection with their alleged vicarious copyright infringement.

To sustain such a claim, in addition to establishing that the other named defendants committed direct infringement (which Plaintiff cannot do), Plaintiff must demonstrate that Witherspoon and Papandrea have a direct financial interest in the infringer's activity *and* that, at all material times, they both possessed the right and ability to supervise the infringing activity. *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 WL 3512991, at *9 (N.D. Ill. July 14, 2014). As to the latter, for vicarious liability to attach, the defendant "must have the right and ability to *supervise* and *control* the infringement, not just affect it." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007) (emphasis in original). Accordingly, for purposes of personal jurisdiction, Plaintiff must also show that this alleged conduct—Witherspoon and Papandrea's ability to supervise and control the making and distribution of the Film (Dkt. 55, First Amended Complaint for Copyright Infringement ("FAC") ¶ 116)—"directly arises out of" their contacts with Illinois. *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1024.

Plaintiff has failed to satisfy this test for personal jurisdiction. In particular, she has not shown that Witherspoon and Papandrea purposefully directed their activities at Illinois, that the

---

[2] In fact, several of Plaintiff's exhibits lend additional support for the statements in Witherspoon and Papandrea's declarations that Fox alone acquired the rights to *Gone Girl*. For example, Plaintiff cites Exhibit A to support her claim that "Defendants together succeeded in brokering Defendant Twentieth Century Fox's acquisition of film rights to the Novel." (Resp. at 2.) In that exhibit, however, the article accurately reports that "20th Century Fox acquired *Gone Girl*," and it details that "Fox's New York office, headed by Drew Reed, was all over this book. Reed and Chris Goldberg teamed with Peter Kang to bring it in." (Dkt. 83-2, Resp. Ex. A at 1.) The only mention of Witherspoon and Papandrea is that they were to produce the Film. (*Id.*) Plaintiff's Exhibit D similarly states that the novel's "adaptation rights went to 20th Century Fox . . . with Reese Witherspoon, Bruna Papandrea, and Leslie Dixon producing." (Dkt. 83-5, Resp. Ex. D at 1.)

alleged injury arose out of their forum-related activities, and that the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *N. Grain Mktg., LLC*, 743 F.3d at 492. The Court should therefore dismiss her claim.

> **A.      Plaintiff Has Not Shown that Witherspoon and Papandrea Purposefully Directed Their Activities at Illinois or Purposefully Availed Themselves of the Privilege of Conducting Business in Illinois.**

In her response brief, Plaintiff argues that Witherspoon and Papandrea directed their activities to Illinois "when they engaged Flynn . . . to option her rights in the infringing Novel." (Resp. at 5.) But Plaintiff's reliance on the phone call between Witherspoon, Papandrea, and Flynn is misplaced. That is, Plaintiff fails to recognize that the activities from which her claim arises as to Witherspoon and Papandrea—namely, that they were producers who purportedly could exercise control over the production and distribution of the Film (FAC ¶ 116)—are entirely unrelated to the call with Flynn and occurred exclusively in California.[3]

As an initial matter, it is undisputed that the phone call Witherspoon and Papandrea had with Flynn did not result in them securing a movie studio to produce the Film; Fox ultimately obtained the rights to produce and distribute the Film and secured the rights directly from Flynn. (Dkt. 76-1, Declaration of Laura Jeanne Reese Witherspoon ("Witherspoon Decl.") ¶ 4; Dkt. 76-2, Declaration of Bruna Papandrea ("Papandrea Decl.") ¶ 4.) As Witherspoon and Papandrea's declarations make clear, they "did not . . . enter into contracts with *anyone* in

---

[3] Plaintiff cites to *Triad Capital Management, LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357 (N.D. Ill. Aug. 25, 2008), to support her argument that it is enough for Witherspoon and Papandrea to have contacted Flynn by phone and that it is irrelevant they never traveled to Illinois. (Resp. at 5-6.) As discussed, however, Plaintiff's reliance on the call misses the mark altogether—her claim for vicarious copyright infringement against Witherspoon and Papandrea did not "directly arise" out of that call. *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1024. As the *Triad Capital* court explained, a defendant's contacts must "evince a real relationship with the state with respect to the transaction at issue," which here is Witherspoon and Papandrea's alleged control over the production and distribution of the Film. *Triad Capital*, 2008 WL 4104357, at *6. No such relationship exists between that conduct and Illinois.

5

Illinois in connection with the production and/or distribution of the film *Gone Girl*." (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5 (emphasis added).) They also did not have *any* involvement in brokering the agreement between Flynn and Fox, nor did they have any involvement in hiring Flynn to write the screenplay for the Film. (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4.). And Plaintiff cannot possibly proffer any evidence that the phone call resulted in Witherspoon or Papandrea having control or supervision over the production and distribution of the Film because ***they never had any such control***. (*See* Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.) Plaintiff's reference to news articles about Witherspoon having once optioned certain rights to the novel *Gone Girl* is a red herring. This is not a lawsuit about option agreements; Plaintiff is suing Witherspoon and Papandrea for vicarious copyright infringement in connection with the Film, which Fox actually produced and distributed.[4]

More importantly, Plaintiff's claim against Witherspoon and Papandrea for vicarious copyright infringement does not "directly arise" from *any* contacts with Illinois, including the call with Flynn. Witherspoon and Papandrea did not participate in writing the screenplay or in making any creative contributions to the storyline depicted in the Film. (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.) Thus, they could not have engaged in any alleged vicarious copyright infringement in Illinois (or elsewhere). Any limited involvement they had as producers occurred entirely outside of Illinois. (*Id.*) As their declarations unequivocally and unwaveringly represent, Witherspoon and Papandrea did not have any contacts with Illinois related to their

---

[4] Plaintiff misleadingly excerpts statements in Witherspoon and Papandrea's declarations to suggest that they optioned the rights to the Film and then "began working" on making it. (Resp. at 6.) As stated in their declarations, however, Witherspoon and Papandrea "began working" to help Flynn find a studio to produce the Film (Witherspoon Decl. ¶ 3; Papandrea Decl. ¶ 3), but those efforts were not successful, and instead, Fox entered a separate, independent deal with Flynn to make the novel *Gone Girl* into a movie (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4). (*See also* Dkt. 83-2, Resp. Ex. A at 1 (describing Fox's acquisition of the novel rights).)

6

alleged ability to supervise and control the production and distribution of the Film.[5] They did not hold meetings in Illinois, they did not transact any business with anyone in Illinois, and they did not enter into any contracts in Illinois (including with Flynn) in connection with the Film. (*Id.*) They also did not hire or employ anyone in Illinois for the Film. (*Id.*)

The call on which Plaintiff focuses did not directly result in Witherspoon or Papandrea having the ability to supervise and control the production and distribution of *Gone Girl*. (FAC ¶ 116.) And that call was also not the "separate agreement with Fox" to compensate Witherspoon and Papandrea for the early time and effort they invested but which did not lead to the creation of the Film ultimately produced and distributed by Fox. (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4.) Simply put, no cause of action in this case is based upon the call between Witherspoon, Papandrea, and Flynn.

Plaintiff relies on both *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010) and *Durham v. Katzman, Wasserman & Bennardini*, 375 F. Supp. 2d 495 (S.D. Miss. 2005), to contend that it is enough for a defendant to reach out to Illinois residents to justify the court exercising jurisdiction over that defendant. (Resp. at 6.) But, in both cases and unlike here, the court exercised jurisdiction because the plaintiffs' claims directly arose out of the defendants' alleged contacts with Illinois. In *Hemi Group*, the State of Illinois sued the defendant company for selling cigarettes to Illinois residents through its website in violation of state laws and for failing to report those sales in violation of federal law, 662 F.3d at 755-56, and in *Durham*, the plaintiff brought suit for breach of an oral contract that allegedly occurred over the telephone,

---

[5] While Plaintiff alleges that certain defendants collectively had the right to supervise and control "the production and distribution of the Film," she also concedes that Fox is the distributor of the Film. (FAC ¶ 10.) As detailed in their declarations and *infra*, Witherspoon and Papandrea had no role whatsoever with respect to the distribution of *Gone Girl*. (Witherspoon Decl. ¶ 7; Papandrea Decl. ¶ 7.)

7

375 F. Supp. 2d at 497. Thus, the defendants' contacts with the state were the direct basis for the claims asserted in *Hemi Group* and *Durham*, which is entirely distinct from the vicarious copyright infringement claim that Plaintiff alleges here. Indeed, this is not a case where Plaintiff is suing Witherspoon and Papandrea over a fraudulent statement or broken promise made on the phone call between Witherspoon, Papandrea, and Flynn in Illinois.

Plaintiff also contends that a single purposeful contact is sufficient and cites to *MG Design Associates, Corp. v. CoStar Realty Information, Inc.*, 224 F. Supp. 3d 621 (N.D. Ill. 2016) for support. (Resp. at 6.) In *MG Design*, however, the court explained that "[t]here is no 'pendent' or 'supplemental' theory of specific personal jurisdiction." 224 F. Supp. 3d at 629. Rather, "personal jurisdiction over the defendant must be established as to each claim asserted." *Id.* Plaintiff's contention that the phone call is sufficient for the Court to exercise personal jurisdiction here is nothing more than a pendent or supplemental theory of specific personal jurisdiction that the *MG Design* court specifically disavowed. Plaintiff presents no meaningful allegations or evidence of any direct connection between her claim for vicarious copyright infringement and Witherspoon and Papandrea's phone contact with Illinois. All of the factual allegations necessary to establish her claim are based on Witherspoon and Papandrea's conduct outside of Illinois (*i.e.*, as producers of the Film who allegedly had control over its production and distribution).

Neither Plaintiff's inapposite case law nor her cited articles that fail to refute Witherspoon and Papandrea's Illinois contacts can cure the personal jurisdiction defect in her first amended complaint. Because Plaintiff has not established that Witherspoon and Papandrea purposefully directed their activities at Illinois or purposefully availed themselves of the privilege of conducting business in Illinois, her claim against them should be dismissed.

8

### B. Plaintiff Has Not Shown and Cannot Show that Her Alleged Injury Arose out of Witherspoon and Papandrea's Activities in Illinois.

Plaintiff next contends that her alleged injury arose from Witherspoon and Papandrea's "contact with defendant Flynn here in Illinois." (Resp. at 7.) In support of this assertion, she makes several statements that mischaracterize the facts set forth in Witherspoon and Papandrea's declarations. First, Plaintiff misleadingly states that "Defendants admit that their involvement with the Film began upon contacting defendant Flynn here in Illinois." (*Id.*) But, as explained in their declarations, Witherspoon and Papandrea's "involvement with the Film" could not have "[begun] upon contacting" Flynn because that introductory call was not a negotiation or a contract for the making of the Film at issue, and it also was not a discussion about the distribution of the Film, which had not yet been made. (Witherspoon Decl. ¶ 3; Papandrea Decl. ¶ 3.) Thus, Witherspoon and Papandrea cannot be said to have had any "involvement with the Film" at that early juncture.

Plaintiff also argues, without any support, that Witherspoon and Papandrea optioned the infringing novel *Gone Girl* and doing so "arose out of their contact" with Illinois. (Resp. at 7.) Again, Witherspoon and Papandrea's declarations state that they were not involved in the negotiations or eventual agreement between Fox and Flynn, through which *Fox*—and not Witherspoon and Papandrea—obtained the film rights to the allegedly infringing novel. (Witherspoon Decl. ¶ 4; Papandrea Decl. ¶ 4.) To be sure, Plaintiff has not asserted any claims arising from *any* statements made during any phone call between Witherspoon, Papandrea, and Flynn; rather, she brought this action concerning the Film, which was produced and distributed pursuant to a separate agreement between Fox and Flynn (*id.*).

Further, as discussed, in their role as producers, Witherspoon and Papandrea did not render any services with respect to the Film in Illinois. (Witherspoon Decl. ¶ 5; Papandrea Decl.

9

¶ 5.) And they also did not have any role with respect to the distribution of the film (Witherspoon Decl. ¶ 7; Papandrea Decl. ¶ 7), which, as Plaintiff acknowledges, was handled by Fox (FAC ¶ 10).[6] In similar circumstances, courts have refrained from exercising personal jurisdiction over defendant producers who likewise did not participate in the distribution of the allegedly infringing work. *See, e.g.*, *Horizon Comics Prod. v. Marvel Entm't, LLC*, No. 15-11684, 2016 WL 526145, at \*1, \*5 (D. Mass. Feb. 9, 2016); *Palnik v. Westlake Entm't Inc.*, 344 F. App'x 249, 253-54 (6th Cir. 2009); (*see also* Dkt. 76, Memorandum of Law in Support of Defendants Laura Jeanne Reese Witherspoon and Bruna Papandrea's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction ("Memo.") at 10-11 (discussing cases)). The Court should decline to do so here as well.

### C. Plaintiff Has Not Shown that the Court's Exercise of Personal Jurisdiction Would Comport with Fair Play and Substantial Justice.

Plaintiff has also failed to show that personal jurisdiction would comport with traditional notions of fair play and substantial justice.[7] In support of her claim that she has satisfied this part of the personal jurisdiction test, Plaintiff contends that Witherspoon and Papandrea "do not dispute that the results of their infringing activity . . . substantially occurred in Illinois." (Resp.

---

[6] Plaintiff relies on *Images of the World, Inc. v. Continental American Industries*, No. 04 C 7002, 2005 WL 2171193 (N.D. Ill. Aug. 30, 2005), to support her argument that she has satisfied the second requirement for personal jurisdiction (Resp. at 7), but that case involved a defendant who was a distributor, which Witherspoon and Papandrea are not (FAC ¶ 10).

[7] In her response brief, Plaintiff contends that she "has an interest in obtaining relief in this forum as defendants Flynn and [Fox] both reside in Illinois, and no other defendants are contesting this Court's personal jurisdiction." (Resp. at 8.) First, while Witherspoon and Papandrea understand that Fox is not challenging personal jurisdiction at this juncture, they do not have knowledge of Fox "resid[ing] in Illinois." (*See* Dkt. 78, Defendant Twentieth Century Fox Film Corporation's Answer and Additional Defenses to Plaintiff's First Amended Complaint for Copyright Infringement ¶ 10 (admitting that it is a Delaware corporation with its principal place of business in Los Angeles, California).) Second, as to Plaintiff's claim that "no other defendants are contesting" personal jurisdiction, Witherspoon and Papandrea note that Plaintiff has also named as a defendant Leslie Dixon, who has not been served and thus has not yet filed a response to the first amended complaint.

10

at 9.) Plaintiff yet again grossly mischaracterizes Witherspoon and Papandrea's positions. As discussed, Witherspoon and Papandrea's declarations clearly state that any limited involvement they had with respect to the allegedly infringing activity—*i.e.*, their control over the production and distribution of *Gone Girl*—occurred, if at all, outside of Illinois. (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.) Neither Witherspoon nor Papandrea visited Illinois in connection with the Film, conducted any business with anyone in Illinois in connection with the Film, or hired anyone in Illinois in connection with the Film. (*Id.*)

As explained in their opening motion to dismiss (and among other reasons), haling Witherspoon and Papandrea into an Illinois court would offend traditional notions of fair play and substantial justice. Both Witherspoon and Papandrea live in Los Angeles (Witherspoon Decl. ¶ 2; Papandrea Decl. ¶ 2) and would be burdened by having to travel to Illinois for depositions, hearings, and trial. (Memo. at 11.) While Plaintiff highlights that Witherspoon has visited Chicago on at least one occasion to receive an award (Resp. at 8), that singular visit is of no import for purposes of this Court exercising personal jurisdiction, which could potentially require Witherspoon to make frequent and repeated visits to the state to litigate this action. As also discussed, Witherspoon and Papandrea's limited involvement with *Gone Girl* in California could not have reasonably put them on notice that they could be sued in Illinois. (*See also* Memo. at 11 (discussing other factors that weigh against the Court's assertion of jurisdiction over Witherspoon and Papandrea).) Because Plaintiff has failed to show otherwise, her claim should be dismissed.

## II. JURISDICTIONAL DISCOVERY IS NOT WARRANTED.

Plaintiff argues that, even if she has failed to make a prima facie showing of personal jurisdiction, she is automatically entitled to jurisdictional discovery. (Resp. at 10.) Plaintiff is incorrect, and in so arguing, she presents the wrong standard for obtaining jurisdictional

11

discovery. Instead, in the Seventh Circuit, a plaintiff must first establish a prima facie case of jurisdiction over the defendant before she is entitled to jurisdictional discovery. *Ctr. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946-47 (7th Cir. 2000). In particular, to obtain jurisdictional discovery, a plaintiff is required to advance "proof to a reasonable probability" of the facts necessary to establish federal jurisdiction. *Pentwater Equity Opportunities Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, No. 15-CV-1885, 2016 WL 6476541, at *1 (N.D. Ill. Nov. 2, 2016). Because Plaintiff has failed to establish a prima facie case of jurisdiction over Witherspoon and Papandrea, she is not permitted jurisdictional discovery.

As explained above, Witherspoon and Papandrea's declarations are unequivocal and dispositive as to their complete lack of contacts with Illinois in connection with their alleged vicarious copyright infringement. Plaintiff has not challenged the credibility of either Witherspoon or Papandrea. Instead, she has submitted a video clip and five articles with her response brief, though none of them suggest any dispute warranting jurisdictional discovery. *See supra* at 3-4. Plaintiff also does not, and cannot, identify any discovery that she needs, including any questions that require answers as to Witherspoon and Papandrea's contacts with Illinois. Indeed, there is nothing to inquire about because, as set forth in their declarations, neither Witherspoon nor Papandrea had any contacts with Illinois as it relates to the claim asserted against them. (Witherspoon Decl. ¶ 5; Papandrea Decl. ¶ 5.)

Courts have found that jurisdictional discovery is not warranted in similar circumstances. For example, in *Ticketreserve, Inc. v. viagogo, Inc*., 656 F. Supp. 2d 775, 782-83 (N.D. Ill. 2009), the court denied jurisdictional discovery where the plaintiff had failed to make a prima facie showing of personal jurisdiction over the defendant. The defendant had submitted a written

12

declaration, unequivocally denying any involvement in the operation of the allegedly infringing website. *Id.* at 783. The plaintiff responded by submitting exhibits to the court, but those exhibits only demonstrated that the website was aimed at Illinois residents—not that the defendant had sufficient ties to the website. *Id.* Because the plaintiff had provided nothing more than an "unsupported suspicion," the court denied its request for jurisdictional discovery and dismissed the claim for lack of personal jurisdiction. *Id.*; *see also Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at *6 (N.D. Ill. Oct. 29, 2014) (holding that jurisdictional discovery was unwarranted where the defendant presented affirmative evidence that refuted the plaintiff's assertion of jurisdiction). That same reasoning applies here and warrants rejection of Plaintiff's request.

In support of her argument, Plaintiff primarily relies on a string of cases from outside this jurisdiction that apply a different standard than that promulgated by the Seventh Circuit[8] or otherwise involve facts and issues not present here.[9] She also cites to a case, *Nordica USA Corp. v. Ole Sorensen*, 475 F. Supp. 2d 128 (D.N.H. 2007), inaccurately representing that the court there found that "the plaintiff was entitled to jurisdictional discovery." (Resp. at 11.) In *Nordica*, however, the court denied the motion for jurisdictional discovery, as the plaintiffs had failed to articulate what specifically they needed in discovery. *Id.* at 139. Like here, the *Nordica*

---

[8] *See, e.g.*, *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 571 n. 102 (S.D.N.Y. 2012); *Maverick Entm't Grp., Inc. v. Does 1-2,115*, 810 F. Supp. 2d 1, 17 (D.D.C. 2011).

[9] *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (analyzing personal jurisdiction under the Clayton Act); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (allowing discovery where defendant had filed multiple sworn declarations that contradicted each other); *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 292 (E.D. Pa. 2009) (allowing discovery because defendants admitted to contact with the forum state that was potentially relevant to personal jurisdiction); *Andersen v. Sportmart, Inc.,* 179 F.R.D. 236, 242 (N.D. Ind. 1998) (granting request for discovery because the plaintiff had first established a prima facie showing of personal jurisdiction); *Boustead v. Barancik*, 151 F.R.D. 102, 104 (E.D. Wis. 1993) (allowing discovery for purposes of subject matter jurisdiction).

plaintiffs had made a broad request for discovery and did not specify the type of evidence they thought they would find or provide any detailed descriptions of additional pertinent avenues of inquiry that they hoped to pursue. *Id.* The court, thus, denied the discovery request because plaintiffs had failed to establish a prima facie case for specific jurisdiction and failed to present specific facts regarding their request for jurisdictional discovery. *Id.* at 135, 139.

As in *Nordica*, Plaintiff's broad and unsupported request for jurisdictional discovery is similarly fatal to her ability to obtain it. She does not identify any information that she needs for the Court to determine whether it has personal jurisdiction over Witherspoon and Papandrea. Moreover, the parties jointly agreed to stay all discovery pending the motions to dismiss (Dkt. 48, Joint Motion to Stay the Parties Discovery Obligations), and nothing has changed to make discovery necessary for the Court to decide this motion.

## CONCLUSION

For all the foregoing reasons and those discussed in Witherspoon and Papandrea's opening brief, the Court should dismiss Plaintiff's claim against Witherspoon and Papandrea for lack of personal jurisdiction and should deny Plaintiff's request for jurisdictional discovery. For the reasons set forth in Witherspoon, Papandrea, and the other defendants' Rule 12(b)(6) motion (Dkts. 73, 74) and supporting reply, the Court should dismiss the claims in their entirety. If the Court grants that Rule 12(b)(6) motion, it need not decide this motion.

14

Dated: April 12, 2018						Respectfully submitted,

								LAURA JEANNE REESE WITHERSPOON &
								BRUNA PAPANDREA

								By:	/s/ Richard L. Stone

									JENNER & BLOCK LLP
									Richard L. Stone (*pro hac vice*)
									David R. Singer (*pro hac vice*)
									Andrew G. Sullivan (*pro hac vice*)
									633 West 5th Street
									Suite 3600
									Los Angeles, California 90071
									Tel: (213) 239-2203
									Fax: (213) 239-5199

									Ashley M. Schumacher
									Laura L. Norris
									353 North Clark Street
									Chicago, Illinois 60654
									Tel: (312) 840-8672
									Fax: (312) 840-7776

								*Attorneys for Defendants Laura Jeanne Reese*
								*Witherspoon and Bruna Papandrea*

15

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on April 12, 2018, a true and correct copy of **Reply in Support of Defendants Laura Jeanne Reese Witherspoon and Bruna Papandrea's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: April 12, 2018          By:     /s/ Ashley M. Schumacher
                                       Ashley M. Schumacher
                                       JENNER & BLOCK LLP
                                       353 North Clark Street
                                       Chicago, Illinois 60654
                                       Tel: (312) 840-8672

                                       *Attorney for Defendants Laura Jeanne*
                                       *Reese Witherspoon and Bruna Papandrea*